[Crim. No. 68.   Third Appellate District.—April 7, 1908.]

## In re P. DIEHL on Habeas Corpus.

MUNICIPAL CHARTER—LICENSE TAX—BUSINESS OF HORSESHOEING—PENALTY.—Where a municipal charter, established by freeholders and approved by the legislature, expressly grants authority to its governing body to license, for purposes of regulation and revenue, every kind of business transacted in the city, such body has power by ordinance to impose a license tax upon the business of shoeing horses within the limits of the municipality for profit, and to make it a misdemeanor to violate the terms of the ordinance.

ID.—POWER OF REGULATION—ORDINANCE FOR REVENUE.—Since the power to regulate does not extend to a lawful business, not the subject of regulation, an ordinance imposing a license tax on businesses enumerated, according to the amount of business transacted, being within the express authority conferred to tax for revenues, must be presumed to be intended for that lawful object. It cannot be presumed in such case that it was intended for purposes of regulation only.

ID.—HORSESHOEING A BUSINESS "FOR PROFIT."—The occupation of shoeing horses is a business carried on and transacted "for profit" within the terms of the ordinance.

ID.—PENALTY FOR VIOLATION OF ORDINANCE FOR REVENUE.—The municipal authorities have power to impose a penalty for violation of an ordinance imposing a license tax for revenue purposes.

ID.—CONSTRUCTION OF PENAL CODE—FREEHOLDERS' CHARTER.—Section 3366 of the Penal Code, limiting licenses to the purpose of regulation, has no application to a freeholders' charter, established under section 6 of article XI of the constitution.

PETITION for writ of *habeas corpus* to the city marshal of the City of Napa.

The facts are stated in the opinion of the court.

Theo. A. Bell, and Jos. D. Cornell, for Petitioner.

Wallace Rutherford, City Attorney, for Respondent.

HART, J.—The petitioner was arrested by N. E. Boyd, city marshal of the city of Napa, upon a warrant of arrest issued out of the justice's court of Napa township in the county of Napa.

The complaint upon which said warrant of arrest was issued charges the petitioner with the violation of Ordinance No. 374, as amended by Ordinance No. 400, of said city of Napa, in that said petitioner engaged in carrying on the business of horseshoeing "for profit, for which a license is required, without procuring a license therefor."

It is claimed by the petitioner that his restraint is illegal and void, and he therefore asks that he be restored to his liberty through the writ of *habeas corpus*.

The ordinance referred to enumerates a long list of businesses and occupations made, by the provisions thereof, subject to a municipal license tax. In certain instances the amount of the tax required is graduated according to the amount of the business done.

Section 21 of said ordinance provides that "every person engaging in the business of shoeing horses, or who does a general blacksmithing business, shall pay a license tax of $1 per month."

Section 4 authorizes the city tax collector to institute suit against any person carrying on any of the businesses or occupations mentioned in the ordinance who has failed or refused to take out the required license for the recovery of the amount of the license tax.

Section 69 provides that "any person violating or willfully noncomplying with any of the provisions of this ordinance is guilty of a misdemeanor, and shall, upon conviction thereof, be punished by a fine of not less than $5 nor more than $100, or imprisonment in the city jail until said fine is paid." in proportion to one day for each dollar of such fine.

It is claimed that so much of said ordinance as requires the payment of a license tax as a condition to carrying on the business or exercising the occupation of horseshoeing and subjecting a person to the penalty of a misdemeanor for failure to procure the license prescribed, is unconstitutional and void, for the following reasons: 1. That said ordinance attempts to *regulate* the occupation of horseshoeing, which occupation is not subject to regulation; 2. That the occupation of shoeing horses is not a *business* carried on or transacted *for profit*.

The city of Napa is governed as a municipal corporation by a freeholders' charter, and among the powers thereby granted

to the city council, or governing body of said municipality, is that of licensing, for purposes of regulation and *revenue*, "all and every kind of business transacted or carried on in said city," etc., and "to provide for the collection thereof by suit or otherwise." (Stats. 1903, p. 697.)

It is contended that the ordinance under consideration does not show upon its face that it is a revenue measure, and that, therefore, the presumption is that it was intended for regulatory purposes. In support of this position counsel cite *Bessette* v. *People*, 193 Ill. 334, [62 N. E. 215], and Cooley on Taxation, 3d ed., p. 1139.

We do not think the contention of the petitioner is sustained by the authorities cited. It is true that it appears to be the rule, as Mr. Cooley declares it to be, that, "as all delegated powers to tax are to be closely scanned and strictly construed, it would seem that when a power to license is given, the intendment must be that regulation is the object, unless there is something in the *language of the grant,* or in the *circumstances under which it is made,* indicating with sufficient certainty that the raising of revenue by means thereof was contemplated." And the Illinois supreme court, in *Bessette* v. *People*, 193 Ill. 334, [62 N. E. 215], only follows and adopts the rule as thus laid down by Judge Cooley.

But in the case at bar there is no reason for invoking the operation of a presumption as to the object of the provision of the ordinance requiring a license tax to be paid by a person engaging in the occupation of horseshoeing within the limits of the city of Napa. The charter, as we have seen, grants to the municipal authorities the power to license a business either for revenue or for regulation. Thus it is to be observed that there is "something in the language of the grant" indicating that the provision in question involves only the exercise of the taxing power. The provisions of the ordinance grading the amount of the tax on certain businesses therein enumerated according to the amount of the business transacted furnish additional evidence that the ordinance, as a whole, was intended as a revenue measure. But it is not, in our opinion, necessary that the ordinance, so far as the business of petitioner is concerned, should by any particular language indicate that the purpose of requiring a license tax for engaging in the business of horseshoeing is for revenue. We are familiar with no principle sustaining the proposition

that where, as here, the charter expressly authorizes the imposition of a license tax for purposes of revenue upon every kind of business transacted, and a business so taxed is one which admittedly cannot be regulated, a presumption arises that the measure is one of regulation in the absence of language therein indicating its purpose to be for revenue. In other words, it is conceded that horseshoeing is a business which cannot be regulated. (*Bessette* v. *People*, 193 Ill. 334, [62 N. E. 215] ; Cooley on Taxation, p. 1125.) Now, then, upon what principle can a presumption be justified that the city council, having express power to license a business for revenue, intended to license such business, which cannot be made the object of regulation, for the purposes of regulation rather than for revenue? It seems to us, rather, that the presumption would be, if presumption were at all necessary, that the city council intended to do only what it had the right and the power to do.

We do not think there is any merit in the point that the occupation of shoeing horses is not a business carried on or transacted for profit. The charter provision no doubt employs the word "business" in its broadest signification, and the term as so used was, in our judgment, intended to include, with a few possible exceptions, all manner of occupations or means by which persons earn a livelihood. Besides, the profits realized by a farrier, engaged in business for himself, are not, presumably, confined to the value of his services in adjusting shoes upon the hoofs of the animals brought to his establishment to be shod. He is entitled to, and no doubt charges for and receives, a reasonable profit for the labor and the material necessarily employed in the manufacture of the shoes, or, if he does not manufacture them himself, then a reasonable return on his investment, which, of course, constitutes the profit.

Counsel further makes the point that, if the provision of the ordinance relative to the business of the petitioner is designed for the purpose of revenue, then it is against the spirit and policy of the law to subject a person failing or refusing to pay the license required therefor to penal punishment for the mere nonpayment of a debt. This point was forcefully presented, but no authorities cited sustaining it. Our attention has not been turned to any California authority upholding the position, but, so far as we are advised, it

has been uniformly the assumption that the power exists in the local authorities to declare as a misdemeanor the act of noncompliance with the provisions of an ordinance requiring the payment of a license tax for revenue purposes. We see no reason why such power should not be exercised consistently with the policy of the law against imprisonment for debt. We do not understand the penal clause of the ordinance before us to mean that one engaging in business upon which a license tax is imposed under the taxing power and refusing to procure the license required may be imprisoned until the license tax is paid. The misdemeanor consists in a *refusal to obey the provisions of the ordinance,* and the fine authorized to be imposed upon conviction is not intended as a payment of the license tax, but as a punishment for defying the commands of the ordinance. The mere conviction and punishment do not and cannot have the effect of absolving the offender from the duty of procuring the required license if thereafter he resumes engaging in the business. And, if he should again refuse to take out the license, he may then be subjected to another prosecution and punishment for such refusal.

Some reference was made during the course of the argument to section 3366 of the Political Code. This section, enacted by the legislature of 1901, restricts the power of licensing by local legislative bodies "of all and every kind of business" to the purposes of regulation. But that section has been construed, in view of the provisions of section 6 of article XI of the constitution, as amended in 1896, as having no application to municipalities governed by freeholders' charters (*Ex parte Braun,* 141 Cal. 207, [74 Pac. 780]), and it can, therefore, exert no influence on the decision of the questions involved in the case at bar.

We think the provisions of the ordinance complained of here are in all respects valid, and represent a reasonable exercise of an expressly granted power.

For the foregoing reasons, the writ is denied and the petitioner remanded.

Chipman, P. J., and Burnett, J., concurred.