[No. 24752. *En Banc.* March 17, 1934.]

HARRY D. AUSTIN *et al., Appellants,* v. THE CITY OF SEATTLE *et al., Respondents.*

THE CITY OF SEATTLE, *Respondent,* v. HARRY D. AUSTIN *et al., Appellants.*[1]

[1]Reported in 30 P. (2d) 646.

*Mifflin & Mifflin, Bogle, Bogle & Gates,* and *Ray Dumett,* for appellants.

*A. C. Van Soelen, Walter L. Baumgartner,* and *C. V. Hoard,* for respondents.

BLAKE, J.—Appellants were each separately charged by a complaint filed with a justice of the peace with the violation of certain ordinances of the city of Seattle imposing an occupational tax. They were found not guilty, and the city appealed to the superior court. Thereupon, the appellants, as plaintiffs, joined in a civil action against the city, seeking to enjoin it from enforcing the ordinances upon which its criminal prosecutions were based.

The city demurred to the complaint in the civil action, and all of these matters were brought on for hearing at the same time in the superior court.

In the criminal cases, the appellants admitted the facts charged, but pleaded not guilty because of the claimed invalidity of the ordinances. The trial court sustained the demurrer to the complaint in the civil case, and the appellants electing to stand on their complaint, judgment followed dismissing the action with prejudice.

The appellants were each adjudged guilty under the criminal charge, fined ten dollars and costs, and ordered committed until the payment thereof. Separate appeals from these several judgments have been consolidated for hearing in this court.

The original ordinance here under attack is the ordinance considered and largely quoted in *Pacific Telephone & Telegraph Co. v. Seattle,* 172 Wash. 649, 21 P. (2d) 721, and *Puget Sound Power & Light Co. v. Seattle,* 172 Wash. 668, 21 P. (2d) 727, together with a later amending ordinance which added a new sec-

tion covering the business activities in which the appellants were engaged, which new section reads:

"Section 7-A. OCCUPATIONS AND PRIVILEGES SUBJECT TO TAX—AMOUNT: There are hereby levied and shall be collected annual license fees or occupation taxes against the persons on account of the business activities or privileges, and in the amounts hereinafter fixed, as follows:

"(a) Upon every person, except national banking associations, engaged in the business of loaning or advancing money on assignments of salaries or wages due or to become due, or discounting salaries or wages due or to become due, a fee or tax of Two Hundred Fifty Dollars ($250) per annum.

"(b) Upon every person, except national banking associations, engaged in the business of loaning or advancing money, or negotiating for the loan or advance of money, on chattel mortgages, or of loaning or advancing money on, or purchasing, agreements of any kind whether in the form of conditional sales contracts, leases or mortgages, whereby title to chattels is to pass upon condition of the payment of the purchase price thereof in installments, a fee or tax of Two Hundred Fifty Dollars ($250) per annum."

Appellants divide their attack upon the ordinance into four headings, and we can best meet the situation by following the course they have outlined.

 Is subdivision (b) of section 7-A void because the classification is arbitrary and not based upon any substantial difference between those occupations which are taxed and those which are not taxed?

This is, of course, an excise tax. *Pacific Telephone & Telegraph Co. v. Seattle, supra.*

"This being an excise tax, the legislature, under the 14th amendment to our state constitution, has very broad power, and we cannot interfere with that power except for arbitrary action, clear abuse, or constructive fraud appearing on the face of the act or from facts of which we may take judicial knowledge." *State*

*ex rel. Stiner v. Yelle,* 174 Wash. 402, 25 P. (2d) 91, and cases there cited.

Within its limited sphere, the city council has the same power to legislate upon such a question as has the legislature itself. *Detamore v. Hindley,* 83 Wash. 322, 145 Pac. 462.

We see nothing in the classification here attacked which smacks of arbitrary action, capriciousness or constructive fraud. The class or classes here designated may be broadly designated as those engaged in the business of making chattel loans, and it is a matter of common knowledge, of which we take judicial notice, that those making chattel loans are, in very many important particulars, doing a distinctively different sort of business than that which is usual and customary in commercial banking and other forms of money loaning not covered by the ordinance.

The method or mode of securing the payment is one important distinction, but it is not, as appellants seem to argue, the only distinguishing difference. Those who lend on chattels deal generally with persons who have little or no commercial credit, and the security rather than the debtor is relied upon. Higher interest rates are charged, partly, no doubt, because of the greater risk, partly because of the greater expense of handling small loans, and partly, no doubt, because of the necessity of the borrower. Defaults are more frequent, necessitating the taking over and resale of the property which stands as security, thus making one engaged in the chattel loan business more or less a dealer in secondhand property. What the profits of the chattel loan business may be, as compared to the profits of loaning money otherwise, we are not prepared to say, but the city council may have had knowledge upon that subject leading to the honest belief

that the percentage earned on money invested in the chattel loan business is greater than that commonly earned by money loaned otherwise.

Perhaps other distinguishing features exist, but enough have been pointed out to indicate that it does not appear from the ordinance or from facts of which we may take judicial notice that the classification is either capricious or arbitrary.

Appellants rely very largely upon the case of *Seattle v. Dencker,* 58 Wash. 501, 108 Pac. 1086, 137 Am. St. 1076, 28 L. R. A. (N. S.) 446, decided by this court in 1910. Whether that case has been modified by more recent cases based upon the growth and development of modern business methods, we need not now stop to decide, because it is clearly distinguishable from this case.

That case had to do with a license tax on an automatic selling device which sold the same merchandise for the same price to the same consumers as was done by others not taxed. Clearly, the thing there taxed was the automatic device alone. No such a situation is here presented. The chattel loan business is inherently different from other methods of money loaning, and that case is not in point.

We cannot review the multitude of authorities which have been cited, but after considering them all we conclude that the answer to appellants' first question must be "no." The classification here made is well within the rule laid down in *State ex rel. Stiner v. Yelle, supra.*

The second question is as to subdivision (b) of the section of the ordinance quoted which excepts national banks. It is urged that this exception, like the classification which we have just been discussing, is arbitrary and discriminatory.

Aside from the reasons already pointed out why national banks may reasonably be distinguished from those engaged in the chattel loan business, it may be further said that such banks are instrumentalities of the Federal government, and may be taxed by the state or its subdivisions only with the consent of Congress. Congress has given the state a limited power to tax such banks. U. S. C. A., Title 12, § 548. Nothing is pointed out, and we know of no legislation, which attempts to confer the power to license or tax national banks upon the cities of our state.

█ It is next argued that the state has occupied the field, and by the enactment of chapter 191, Laws of 1933, p. 869 (Rem. 1933 Sup., § 8326-1 *et seq.*) has precluded the city from exacting such a tax as a condition precedent to doing business. This general subject was thoroughly discussed in *Pacific Telephone & Telegraph Co. v. Seattle, supra,* with special reference to everything done by the state prior to the enactment of the 1933 act. The general rule to be applied is there clearly enunciated, and we need not again enter upon the subject further than to say that, in § 19 of the act of 1933 (Laws 1933, p. 889, § 19), it is specifically provided:

"Taxes imposed by this act shall be in addition to any and all other licenses, taxes and excises levied or imposed by the state or any municipal subdivision thereof." Rem. 1933 Sup., § 8326-19.

The language quoted, if not in itself a direct consent or invitation to the imposition by the municipalities of such a license tax, is at least a declaration of legislative intent that the municipality shall be left wholly unhampered by that act. *Allen v. Bellingham,* 95 Wash. 12, 163 Pac. 18; *In re Sound Transit Co.,* 119 Wash. 684, 206 Pac. 931.

■ Finally, it is contended that the tax imposed is a civil liability, and the penalty of imprisonment provided for in § 24 of the ordinance violates § 17, article I, of the state constitution, which is as follows: "There shall be no imprisonment for debt except in cases of absconding debtors." We do not think the question raised is an open one in this jurisdiction. This court has repeatedly upheld penalties of imprisonment imposed under provisions of ordinances of this character. *Walla Walla v. Ferdon,* 21 Wash. 308, 57 Pac. 796; *Fleetwood v. Read,* 21 Wash. 547, 58 Pac. 665, 47 L. R. A. 205; *Stull v. DeMattos,* 23 Wash. 71, 62 Pac. 451, 51 L. R. A. 892; *In re Garfinkle,* 37 Wash. 650, 80 Pac. 188; *Sumner v. Ward,* 126 Wash. 75, 217 Pac. 502; *Bucoda v. Swaney,* 163 Wash. 43, 299 Pac. 652.

True, in these cases, the question presented here was not raised. But the holdings are in line with the great weight of authority, which is to the effect that taxes and license fees are not debts within the purview of such constitutional provisions as ours. *Voelkel v. Cincinnati,* 112 Ohio St. 374, 147 N. E. 754, 40 A. L. R. 73 (see annotation).

Appellants, however, cite *State v. McFarland,* 60 Wash. 98, 110 Pac. 792, 140 Am. St. 909, and *Bronson v. Syverson,* 88 Wash. 264, 152 Pac. 1039, Ann. Cas. 1917D 833, L. R. A. 1916B 993, as authority to the contrary. We do not so regard them. In the latter case, the court simply held that a judgment in an action sounding in tort was a "debt" within the meaning of the constitutional provision.

The former case arose under the hotel inspection act (Laws 1909, ch. 29, p. 43). That act, among other provisions, created the office of hotel inspector, and defined his duties. Section 19 of the act (Laws 1909,

p. 49) provided a schedule of fees to be annually paid by hotels for services of inspection performed by the hotel inspector. Section 17, p. 48, provided that any hotel proprietor or manager who failed to pay the fees provided for should be deemed guilty of a misdemeanor and subject to imprisonment. The court held the provision invalid on the ground that the inspection fee provided for constituted a ''debt'' within the meaning of § 17, article I, of the constitution.

The distinction between the provision of § 17, chapter 29, Laws of 1909, p. 48, and the provision of the ordinance here under consideration is clear. The charge provided for in the hotel inspection act was for service rendered. It was in no sense a *tax* or a *license fee.* The payment of the inspection fee was not a prerequisite to the right to operate a hotel. The act did not make it unlawful to operate a hotel without paying the inspection fee. Under the ordinance here involved, it is unlawful to engage in the prescribed businesses without paying the tax and obtaining a license. That is the very essence of the offense which is made the subject of punishment. *In re Diehl,* 8 Cal. App. 51, 96 Pac. 98; *In re Nowak,* 184 Cal. 701, 195 Pac. 402. In the former case, it is said:

''Our attention has not been turned to any California authority upholding the position, but, so far as we are advised, it has been uniformly the assumption that the power exists in the local authorities to declare as a misdemeanor the act of non-compliance with the provisions of an ordinance requiring the payment of a license tax for revenue purposes. We see no reason why such power should not be exercised consistently with the policy of the law against imprisonment for debt. We do not understand the penal clause of the ordinance before us to mean that one engaging in business upon which a license tax is imposed under the taxing power and refusing to procure

the license required may be imprisoned until the license tax is paid. The misdemeanor consists in a *refusal to obey the provisions of the ordinance,* and the fine authorized to be imposed upon conviction is not intended as a payment of the license tax, but as a punishment for defying the commands of the ordinance.''

Judgments affirmed.

BEALS, C. J., HOLCOMB, MAIN, STEINERT, MILLARD, GERAGHTY, and MITCHELL, JJ., concur.

TOLMAN, J. (concurring)—I am unable to see any sound distinction between this case and the case of *State v. McFarland,* 60 Wash. 98, 110 Pac. 792. In my opinion, that case is out of harmony with the general rule, and since it stands alone, should be overruled.

In all other respects, I concur with the majority.