### Ex parte SMALL.

No. A-11428.   July 26, 1950.

(221 P. 2d 669.)

Jenner & Bradley, Hugo, for petitioner.

James Bounds, City Attorney of City of Hugo, for respondent Fred White, Chief of Police of City of Hugo, Okla.

POWELL, J. Fred Small has filed a petition in this court seeking a writ of habeas corpus. He alleges that he is unlawfully imprisoned and restrained in the city jail of Hugo, Oklahoma, by Fred White, chief of police, and that the cause of his restraint is his failure to pay the garbage collection and DDT spraying fee levied upon petitioner for the preceding month, as provided by City Ordinance No. 412, of the city of Hugo. A copy of the ordinance in question is attached to the petition, as is a copy of the criminal warrant issued by the judge of the police court, city of Hugo, together with a transcript of evidence of various witnesses for petitioner and respondent given at a hearing before the district court of Choctaw county, where petitioner first sought his release from detention on the charge above stated, and where his efforts were unsuccessful. Hence the petition to this court.

After the petition was filed here, we issued rule to show cause, and thereafter response was filed, and this court has had the benefit of oral argument of counsel for the parties in support of their contentions. And respondent, in accordance with agreement between the parties at time of oral argument, has furnished this court with a certified copy of ordinance No. 357, of the city of Hugo, passed and approved July 15, 1941, which ordered a revision, compilation, and publication of the General

Ordinances of said city; also certified copy of excerpts, being sections 116, 117 and 120, from chapter XVI, article I of said Revised General Ordinances, adopted November 4, 1941; also excerpt, being section 16, from chapter XVIII, article I of said Revised General Ordinances.

Respondent points out that the ordinance in question is not attacked on the ground that it is a revenue-producing measure or that it is not within the power of the city to establish a garbage disposal and DDT spraying system, and responds to the single issue of the constitutionality of the penalty provision of ordinance No. 412, under and by the terms of which a person may be confined to jail for failure to pay a fine after conviction for nonpayment of garbage and DDT spraying fee fixed by ordinance. But petitioner in his brief enlarges the issue somewhat by advancement of some ingenious points not suggested as grounds in petition, and which respondent fails to treat.

In considering Ordinance No. 412, we see no useful purpose in setting the same out in total, as no complaint is made as to the technical structure, but only as to the effect of the ordinance. Suffice to say, the ordinance is comprehensive in its provisions, containing 20 sections. As indicated in the heading, and as agreed to by the parties at the time of oral argument, this ordinance was adopted by the citizens of Hugo at a special election at which the question was submitted, and thereafter the ordinance was attacked by initiative petition, but was sustained by a vote of the people. The heading reads:

"An ordinance relating to sanitation; creating a board of sanitation for the city of Hugo, Oklahoma, and providing for its membership and designating its duties; providing for the collection and removal of garbage, trash and

refuse within the corporate limits of the city of Hugo, Oklahoma, other than from within the fire limits thereof, which are covered otherwise by ordinance; providing for the care and handling of the same pending removal; providing for the setting and collection of fees for the removal of garbage, trash and refuse; providing for DDT spraying within the corporate limits of the city of Hugo, Oklahoma, including the fire limits thereof; providing for the setting and collection of fees therefor; providing penalties for the violation of the provisions of this ordinance; and declaring an emergency; and whereby the said question is submitted to a vote of the qualified electors, residents and citizens of said city at a special election called at which such question shall be submitted."

Sections 18 and 19 read:

"Section 18. For the purpose of defraying the expenses of collection and removal of garbage, trash and refuse, and DDT spraying as in this ordinance provided for, the following fees, which shall be paid by the owner of the premises involved, if occupying or in possession of the same, or the lessee or tenant thereof in occupancy or possession of the same, shall be charged:

"Per month

Each apartment ............................................................. 70¢
Small dwellings (2 rooms or less) ............................ 70¢
Large dwellings (3 rooms or more) ........................ 80¢
(Outhouses and out-structures included in above fees.)

"Section 19. Any person, firm or corporation who shall violate any of the provisions of this ordinance, or shall cause order, direct, aid or abet in the violation of the provisions hereof, shall be punished by a fine of not more than $15.00; provided that each and every and all separate and distinct acts in violation of the terms hereof shall be and constitute a separate and distinct offense."

The excerpt from chapter XIV, article I, supra, reads:

"Section 116. Fines; How Collected. Whenever any person shall be convicted of any offense against any ordinance of the city of Hugo, and be adjudged to pay a fine,

and such person shall fail to pay such fine, and shall be committed to the city prison in default thereof, while in custody, he may be compelled to work on the streets, alleys, avenues, areas and public grounds of the city until such fine is satisfied.

"Section 117. Confinement in Jail. Such person when not at work shall be confined in the city prison, and when at work the Chief of Police may place such person in the care of policemen during the time he shall be employed at such labor and compel him to work under their care and direction."

"Section 120. Day's Work; Duration. All prisoners working out fines, while confined in the city prison for offenses against the city ordinances, shall not be compelled to work more than eight (8) hours for each day's confinement and shall be credited in the sum of One ($1.00) Dollar for each day's work on a judgment against him."

Also, the excerpt from chapter XVIII, article I, supra, reads:

"Section 16. Commitment promptly executed. Upon receiving any commitment, the Chief of Police shall immediately proceed to execute the same, and he may require such person to work out such fine and costs as provided by ordinance."

Respondent also cites Tit. 11 O.S.A. § 721, which provides:

"If the defendant plead or be found guilty, the police judge shall declare and assess the punishment prescribed by ordinance, and render judgment accordingly, and for costs of suit, and that the defendant stand committed until the judgment is complied with."

And Tit. 11 O.S.A. § 722, which provides:

"Any defendant committed under the provisions of this Article [§§ 711-726 this Title], may be discharged on payment of fine and costs, or on perfecting an appeal as hereinafter provided."

A copy of the judgment entered by the police judge of Hugo is not before us, but the parties have stipulated:

"By Mr. Jenner: It is agreed on behalf of Fred White, Chief of Police of the City of Hugo, Oklahoma, that Fred Small, the petitioner herein, is now in the custody of the said Fred White, Chief of Police of the City of Hugo, on a warrant issued on the 17th day of April, 1950, which warrant being Exhibit No. 1 of the petitioner herein, and that the liberty of the said Fred Small has been taken away by his arrest and imprisonment in the city jail of the City of Hugo, Oklahoma, of which he is now in custody; that said imprisonment is based on City Ordinance No. 412 of the city ordinances of the City of Hugo, Oklahoma; that on arraignment and trial the said Fred Small was, by the Police Judge of the City of Hugo, Oklahoma, found guilty of the offense as charged, and was by said court fined for said violation and upon failure of payment by the said Fred Small, of said fine, was committed into the custody of the said Fred White to serve one day for each dollar of fine thereof."

We would mention that Ordinance 412 provides for separate containers for trash and garbage and ashes, provides that the garbage containers be fly-proof and the ash containers be water-proof and trash placed in suitable receptacles, bundles or wrappings; and provides location for placing containers. Also it is made unlawful for any person other than the garbage collector or collectors duly authorized by the mayor and councilmen to collect garbage, trash or refuse within the area covered by the ordinance.

It will be noted from reading section 19, supra, that one might be fined, under the terms of the ordinance, for mixing ashes with garbage, not using fly-proof garbage containers, mixing garbage with trash, etc., or not placing containers properly, or not paying for the service. But in the instant case the offense charged was:

"Violation of the provisions of Ordinance No. 412 relating to sanitation by willfully and wrongfully refusing and failing to pay the garbage collection and DDT fee levied upon said defendant for the preceding month."

This was the charge of which the defendant was found guilty. And while, as stated, we do not have before us the journal entry of the judgment entered, and do not know of the exact amount of the fine assessed, by reason of the stipulation between the parties, it is agreed by them that the petitioner was found guilty of the offense charged and was by the court fined, and by reason of failure and refusal to pay the fine, was committed to the custody of the respondent. Under such state of facts, we must assume that the fine was not more than provided by ordinance, and that the fine and costs did not amount to more than $20.

In the case of Ex parte Barnes, 67 Okla. Cr. 235, 93 P. 2d 765, 767, this court, in construing a 1913 act of the Legislature, being Tit. 28 O.S.A. § 101, announced a rule that is applicable in principle to the present case. There the opinion quoted from Ex parte Clemmons, 27 Okla. Cr. 50, 225 P. 184, as follows:

"A fair construction of this statute [Tit. 28 O.S.A. § 101] impels us to hold that since its enactment its provisions relating to fines and costs automatically become a part of every criminal judgment imposing a fine or imprisonment, or both, and that a failure to make a recital in the judgment that the defendant be held until the fine and costs are satisfied in the manner provided by law will not on habeas corpus relieve the person so convicted from satisfying the fine and costs in the manner designated by this statute. [Citing numerous cases]. * * * They may be satisfied by the payment in money of the amount named, and if the person convicted fails to make such payment the statute directs that the fine and costs 'shall be enforced by imprisonment until the same shall be satisfied at the rate of one dollar per day.'

This brings the duration of the convicted person's imprisonment under his own control. By payment of the fine and costs he can at any time secure his release.

"It is the better practice to recite in the judgment that the defendant stand committed until the fine and costs named are paid, at the rate of $1 per day, but under our statutes a failure to incorporate such a recital in the judgment will not operate to give the petitioner relief on habeas corpus. So far as fine and costs are concerned both the accused and sheriff are bound by the provisions of the statute which, by its terms, give no discretion to the trial court to render a judgment other than that designated by the statute.

"We conclude therefore that to all intents and purposes the fine and costs provisions of the statute automatically become a part of the judgment without any specific recital to that effect. Such recitals in the judgment are commended, however, in order that the convicted person and the sheriff may by an examination of the judgment and commitment avoid any misunderstanding as to the duration of the confinement."

The stipulation does not disclose whether any provision is made in the journal entry for the credit to be allowed petitioner in case he should work on the streets. However, the state statute covering this subject, Tit. 11 O.S.A. § 74, is applicable, and it provides:

"The governing bodies of cities and towns of this State are hereby authorized to work prisoners confined in city jails for nonpayment of fines assessed against said prisoners in police courts in like manner as provided in Section 1 of this Act and when said prisoners are required to perform work on the streets in the said city he shall have credit of two (2) days time for each full day of work actually performed."

At the outset we would point out that a municipality under its police power may within constitutional limitations, determine what is dangerous and injurious to public order, safety, health, morals and general welfare of

the community. Ex parte Strauch, 80 Okla. Cr. 89, 157 P. 2d 201; Ex parte Johnson, 77 Okla. Cr. 360, 141 P. 2d 599; Couch v. State, 71 Okla. Cr. 223, 110 P. 2d 613; Ex parte Tindall, 102 Okla. 192, 229 P. 125; and 62 C.J.S., Municipal Corporations, § 265. Also, that where inhabitants of city adopt by a referendum vote an ordinance to protect the public health and safety of the people, the courts will presume that a state of facts existed which made the passage of the act necessary, and will seek to uphold such ordinance. 62 C.J.S., Municipal Corporations, § 208; and Ex parte Johnson, 20 Okla. Cr. 66, 201 P. 533.

Petitioner bottoms his action on the contention, quoting his words, that "said restraint is illegal and unauthorized, in that the city of Hugo, Oklahoma, has rendered no service to petitioner, and for the further reason that said petitioner is being held in jail for the payment of debt, in violation of the Constitution of the State of Oklahoma and the United States."

Whether the city of Hugo has or has not rendered petitioner a service cannot be raised in this particular action, for the reason that the petitioner was found guilty in the police court of Hugo of violating ordinance 412 by failure to pay the garbage collection and DDT spraying fee levied upon petitioner for the preceding month. The judgment presupposes a basis in evidence to support such finding, and this not being an appeal from said judgment, and the evidence introduced for the consideration of the court not being before us, we must assume that the petitioner did receive the service for which he was charged. If petitioner had appealed to the county or district court and in case of an adverse judgment to this court, the evidence would have been preserved, and this court would not have been limited in scope of its review

as here, for petitioner cannot be discharged by habeas corpus, unless the trial court was without jurisdiction and its judgment was void, however numerous and gross the errors may have been at the trial. Ex parte McDaniel, 55 Okla. Cr. 115, 25 P. 2d 1118; Ex parte Walters, 92 Okla. Cr. 1, 221 P. 2d 659; Ex parte Critser, 87 Okla. Cr. 380, 198 P. 2d 228.

And this is so although the transcript of the evidence given at hearing before the district court of Choctaw county in habeas corpus action and which has been admitted here on stipulation between the parties, indicated that though the petitioner unwillingly received the DDT spraying service, and that his step-daughter without his permission, and apparently against his will, placed a container of tin cans in the alley one time which the city removed; that at other times the petitioner hauled away his own cans and otherwise disposed of his garbage, trash and ashes, and at time of hearing in Hugo had a sack of cans hanging from a nail on the garage wall.

To enable a lower court on trial, and this court on appeal, to correctly determine this factual matter, no doubt the attorney for the respondent would offer evidence bearing on a number of factors involved in the solution. Apparently, the respective value of the refuse and DDT spraying services are not separable and the 80 cents per month fee might not be unreasonable for the spraying service alone. If the evidence should show that there was inspection and then calls, a further service was received, but there being no provision for separating the value of each, the inquiry would be as to the reasonableness of the entire service whether all the service used or but a portion, providing the complete service was always available. And even though he did not as a rule place trash, ashes and garbage in the alley, to be re-

moved by the official garbage hauler, it may be that close neighbors had an abundance for removal that might immediately endanger the health and life of petitioner and his family if not promptly removed as scheduled. Thus he may for such reason have received a benefit. It may be that even though petitioner did not regularly place his refuse in the alley for removal by the official garbage collector, yet the garbage hauler may have had to go to as great a degree of trouble and expense in calling regularly, not knowing when the service might be used. In human experience, any family in the normal course of living, will surely accumulate trash, garbage and ashes. This family might have company, and regardless of how frugal the habits, the petitioner might not always be able to prevent such accumulation. And no doubt the extremely reasonable fee of 80 cents per month for one call per week, was based on a pro rata calculation and the supposition that all property owners whose residences or buildings were inhabited would participate.

Evidence might have shown that the city had to go to trouble and expense having petitioner's place inspected for garbage, trash and ashes and sanitation, whether petitioner used the service at all. In fact, the lack of use of such service, where the property inhabited, might cause the sanitary board much concern and call for more detailed inspection in the interest of the prevention of the spread of disease. For it is well known that the polio epidemics in Oklahoma, as well as the nation, in recent years have caused health authorities much concern and and it is still a mystery as to how and where the polio germs breed and spread. It is generally conceded, however, that sanitation is basic in any health program. Germ control doubtless calls for specialized training and methods, and the evidence of experts to advise laymen

what may or may not constitute reasonable measures. Whether petitioner's methods of disposing of his waste were safe, whether he was qualified to take care of his situation without endangering the health of others, or whether the whole problem was so interlocked, one neighbor with the other, to require a service, and whether there might be any refuse or not, are questions requiring enlightenment by way of testimony from qualified experts and persons familiar with the facts, for solution. There is a vast difference in the relationship, conscious and unconscious, between neighbors in a mountainous section, each miles separated and none rarely ever sighting the other, and in a congested community, where found living only a few yards apart. In the first case, ordinarily, the government may never have occasion to be concerned, as to health measures, but in the latter case, for the public welfare and general benefit of the people as a whole, and for the actual preservation of the public health and safety, and the prevention of epidemics, the municipality should be vitally interested in the adoption of measures calculated to activate a sustaining and functioning general health program. Obviously, measures that would be harsh and oppressive and an infringement on personal liberty and uncalled for in the first instance, might not be in the second.

These questions and others, no doubt, will be given consideration, pro and con, when an appeal has been perfected to this court in a proper case and there is evidence for consideration. Counsel in criminal matters must learn that the writ of habeas corpus cannot take the place of an appeal. Ex parte Cranford, 3 Okla. Cr. 189, 190, 105 P. 367; Ex parte Robnett, 69 Okla. Cr. 235, 101 P. 2d 645; Ex parte Drake, 87 Okla. Cr. 255, 197 P. 2d 308.

It is suggested that the factual issues considered might be in light of a great principle enunciated two hundred years ago by William Paley, the English divine and philosopher, and prior to any knowledge of germs and the spreading of disease and prior to the discovery of practically every invention for the health, comfort and welfare of man, but verified in the intervening years in the crucible of living and experience. Said he:

"To do what we will, is natural liberty; to do what we may consistently with the interests of the community to which we belong, is civil liberty, the only liberty to be desired in a state of civil society."

And see California Reduction Co. v. Sanitary Reduction Works of San Francisco, 199 U. S. 306, 26 S. Ct. 100, 50 L. Ed. 204; Crowley v. Christensen, 137 U. S. 86, 11 S. Ct. 13, 34 L. Ed. 620; Cooley's Constitutional Limitations (8th Ed.) vol. 2, p. 1228.

Petitioner next contends that there is no provision by ordinance or otherwise for the imprisonment of a person for the nonpayment of the fee provided for in Ordinance No. 412.

This proposition is answered by an examination of the ordinances and statutes heretofore quoted. Section 19 of ordinance 412, supra, provides for a fine for nonpayment of the fee assessed. Sections 116-117 from chapter XVI, article I, supra, provide for imprisonment for nonpayment of the fine assessed. And in connection with a study of the above provisions of the involved city ordinances of Hugo, it is found that the general statutes treating the question are in accord with the ordinances. See Tit. 11 O.S.A. § 721 and Tit. 11 O.S.A. § 722, supra.

A person serving out a fine and costs would be entitled, in accordance with Tit. 28 O.S.A. § 101, supra,

construed in connection with sections 116 and 120, of ordinance 412, supra, to a credit of $1.00 per day when not working, but when required to work would be entitled in accordance with Tit. 11 O.S.A. § 74, which statute would prevail over the city ordinance, to the sum of $2.00 per day for each day's labor.

Petitioner finally argues:

"Please observe that we do not say that a person cannot be placed in jail for non-payment of a legal fine but say that Ordinance 412 attempts to make it a violation of a criminal ordinance for the failure to pay a debt, and providing a fine therefor, which violates the constitution, and is therefore void. If the ordinance is void, any judgment and sentence imposed for its violation is void."

The gist of petitioner's argument, as we understand it, is that sections 18 and 19 of ordinance 412 (which of course must be considered in connection with sections 116-17 of chapter XV, article I, supra) constitute a debt collecting device under the guise of a penal law and therefore contravenes the constitutional prohibition against imprisonment for debt. Article II, section 13, Oklahoma Constitution provides:

"Imprisonment for debt is prohibited, except for the non-payment of fines and penalties imposed for the violation of law."

Petitioner concedes that the above constitutional provision is not violated by imprisonment on conviction of non-payment of occupation tax, Ex parte Freie, 42 Okla. Cr. 57, 274 P. 684; Shinn v. Oklahoma City, 59 Okla. Cr. 433, 61 P. 2d 1126, or license tax, Ex parte Marler, 140 Okla. 194, 282 P. 353, but he seeks to distinguish the within case from such cases by contending:

"Now please note that *in every one of the above instances it was for a privilege, and that it was not a vio-*

*lation of the law, was not mandatory for a person to obtain or pay for anything, until he did some affirmative act on his part,* such as engaging in business; driving a motor vehicle; using the public roads, etc. *In other words, he regulated the circumstances as to whether he paid or not."* (Italics ours)

Petitioner sought to avoid the use of the sanitary service.

From what we have said heretofore, we cannot consider any such distinction in this case by reason of the judgment complained of presupposing proper evidence in support thereof, and being for failure to pay for a service rendered and by petitioner received; that is, the garbage collection and DDT spraying fee levied upon petitioner for the preceding month. We cannot under the facts as here, consider the claim of non-user of the service. We might suggest, however, that when a person elects to become a resident of a municipality and to own or control real property therein, and to occupy the same with his family, and there carry on the ordinary activities of family life, that such constitutes an affirmative act of establishing a household within the municipality and entitles such person to all the privileges and benefits of a householder, but at the same time obligates him in common with his fellow householders to comply with the municipal laws enacted for the government of the inhabitants, so long as he remains an active householder within the incorporated limits of the municipality.

The principle raised appears to have been involved in the case of Burns v. City of Enid et al., 92 Okla. 67, 217 P. 1038, where it was contended that a city ordinance was void in that it denied to the citizens the right to dispose of their garbage except as provided by the terms of the ordinance, but the ordinance was upheld for the reasons set out in the opinion.

We now consider the proposition that the petitioner is being held in jail for the payment of debt in violation of art. II, sec. 13 of the Oklahoma Constitution, supra.

We have studied the case of Hubbell v. Higgins, 1910, 148 Iowa 36, 126 N. W. 914, 918, Ann. Cas. 1912B, 822, cited by counsel and principally relied on to sustain his proposition, and involving an Iowa statute wherein it was provided that "any owner, manager, agent or person in charge of a hotel who shall obstruct * * * or who shall fail to pay the proper fee for inspection shall be guilty of a misdemeanor and upon conviction thereof, be fined not exceeding one hundred ($100.00) dollars or imprisonment in the county jail not exceeding thirty days." It was held that such part of the section that makes the mere failure to pay the inspection fee a misdemeanor punishable by fine and imprisonment to be unconstitutional and in violation of the constitutional provision prohibiting imprisonment for debt. This case was cited with approval in State v. McFarland, 1910, 60 Wash. 98, 110 P. 792, 140 Am. St. Rep. 909.

The Iowa constitutional provision, art. I, sec. 19, I.C.A., reads:

"No person shall be imprisoned for debt in any civil action, on mesne or final process, unless in case of fraud; and no person shall be imprisoned for a militia fine in time of peace."

It will be noted from reading the two cases cited that not only may the accused be fined but may be imprisoned for failure to pay the inspection fee. In the case before this court, the petitioner was not imprisoned for failure to pay the sanitary assessment, but for failure to pay a fine assessed. The Oklahoma constitutional provision, supra, specifically permits imprisonment for the

nonpayment of fines and penalties imposed for violation of law.

It may be argued that, nevertheless, the prosecution was for the primary purpose of coercing the payment of the sanitary fee of 80 cents and therefore for the collection of a debt. Not so. It was for the purpose of coercing co-operation on the part of the petitioner in a sanitary program for the public health and safety of the community and for the failure on the part of petitioner to perform a duty enforced in the name of the municipality for the protection of the inhabitants under the inherent police powers of the municipality. The fine assessed was not a debt, but an expense incident to the maintenance of law.

At all events, we think the conclusion reached in Hubbell v. Higgins, supra, with reference to the point at issue, out of harmony with the general rule. And at least some members of the Supreme Court of Washington have felt that State v. McFarland, which adopted the Iowa rule, should be overruled. See concurring opinion of Tolman, Justice, in Austin et al. v. City of Seattle, 176 Wash. 654, 662, 30 P. 2d 646, 649, 93 A.L.R. 203, a case involving state law imposing occupation taxes on persons making chattel loans, and wherein it was held that taxes and license fees are not "debts" within constitutional prohibition of imprisonment for debt. The concurring opinion reads:

"I am unable to see any sound distinction between this case and the case of State v. McFarland, 60 Wash. 98, 110 P. 792, 140 Am. St. Rep. 909. In my opinion that case is out of harmony with the general rule, and, since it stands alone, should be overruled."

See, also, State v. McCollum (Wash.) 141 P. 2d 613, at page 632.

Petitioner next cites the following California cases as sustaining his position: In the Matter of Holdforth, on Habeas Corpus, 1 Cal. 438; Ex parte Crane, 26 Cal. App. 22, 145 P. 733, and Ex parte Trombley, 31 Cal. 2d 801, 193 P. 2d 734. We have examined these cases in light of the California constitutional provision and find no fault with them, but do not find either applicable to the facts in the within case. The first case involves suit to recover money received. And the court held:

"In a suit to recover money received by a person as agent, he cannot be arrested without showing some fraudulent conduct on his part, or a demand on him by his principal, and a refusal by him to pay * * * ."

The last two cases involved failure by employer to pay wages. The debts in question arose by way of civil contract.

In the case of Ex parte Bighorse, 178 Okla. 218, 62 P. 2d 487, the Supreme Court of Oklahoma, considering Const. Okla. art. 2, § 13, held that willful failure to comply with order to pay alimony punishable by contempt proceedings, since alimony is not a "debt" within constitutional and statutory provisions against imprisonment for debt.

And this court, in Ex parte Smith, 76 Okla. Cr. 405, 137 P. 2d 259, held that where trial court suspended execution of three-year sentence for child abandonment, revocation of suspended sentence for failure of defendant to support his minor children was justified because of "violation of law" within statute authorizing revocation of suspended sentence, and did not constitute "imprisonment for nonpayment of debt." See, also, vol. 9, Fifth Decennial Digest, Const. Law, 83 (3).

The Supreme Court of South Carolina in Town of Marion, 192 S. C. 112, 5 S. E. 2d 573, held:

"Enforcement by fine or imprisonment of municipal ordinance imposing 'sanitary tax' to cover inspection services in respect of sanitary toilets and privies does not violate constitutional provision against imprisonment for debt. Const. Art. 1, § 24."

The Supreme Court of Arkansas in Geurin v. City of Little Rock, 203 Ark. 103, 155 S. W. 2d 719, held:

"A city ordinance providing for the collection of garbage, waste, trash, and refuse, and providing a penalty for violation thereof, was not void on ground that it provided for 'imprisonment for debt', since there was no imprisonment for debt but merely punishment for violation of law. Pope's Dig. § 9589."

In the case of Jewel Tea Co., Inc., v. City of Troy, Ill., et al., 7 Cir., 80 F. 2d 366, an injunction was sought and one of the issues raised by petitioner was held not proper in the particular proceeding, the petitioner not being under arrest, and the expression concerning the issue by the court, of course, amounted to dicta. Nevertheless, the gist of the expression as set out in the editorial syllabus is:

"Fine imposed for violation of municipal ordinance requiring license fee is not 'debt' within Illinois Constitution, and imprisonment for nonpayment of such fine does not contravene Illinois Constitution prohibiting imprisonment for debt. (Smith-Hurd Ann. St. Ill. c. 38 § 762; Const. Ill. Art. 2, § 12)."

A well reasoned case is that of Lavender v. City of Tuscaloosa, 29 Ala. App. 502, 198 So. 459, 460. There was involved a city ordinance enacted by the city of Tuscaloosa, which provided in the words of the court:

"* * * that persons not having modern toilet facilities, connected with the city sewage system, shall build and maintain certain specified types of 'sanitary privies.' The amended ordinance further provides that these sani-

tary privies shall be cleaned by the city scavenger, and for this service the city collects a schedule of fees from the persons so served. The ordinance makes the failure or refusal to pay the fees, when they become due and payable, a criminal offense. * * *"

Section 20 of the Declaration of Rights of the Constitution of Alabama, 1901, provides: "That no person shall be imprisoned for debt." The defendant was prosecuted for nonpayment of the fee fixed by said ordinance. The court said:

"The City of Tuscaloosa, appellee, had the authority, under police powers, to enact the ordinance upon which this prosecution was based. It also had the authority to make proper and reasonable regulations therein for the preservation of the health of its inhabitants, and to enforce such regulations by providing for a reasonable penalty for the violation thereof, and the willful neglect or refusal to comply with the provisions of such ordinance; that is to say, with the public duty therein prescribed which may be made a crime without violating Section 20 of the Declaration of Rights of the Constitution of Alabama 1901, as here insisted.

"The immunity from imprisonment for debt contemplated and provided in said Section 20 of the Constitution has application to, and is limited to, debts arising out of contract. Bray v. State, 140 Ala. 172, 183, 37 So. 250, and does not extend to and include a fine and costs imposed by the municipality for the willful neglect or refusal to comply with the public duty imposed upon the defendant by the terms of the ordinance upon which the prosecution was rested."

The court further quotes from Lee v. State, 75 Ala. 29, 30. We think the principle involved applicable to the case now before this court. The quotation is as follows:

" 'That fines, forfeitures, mulcts, damages for a wrong or tort, are not a debt within this clause of the Constitu-

122

tion * * * and when a citizen by his own misconduct exposes himself to the punitive powers of the law, the expense incident to his prosecution and conviction, each and all of these may result in subjecting the defaulter to a money liability. These are not debts incurred by contract inter partes, but are the result of being members of the social compact, or body politic. * * * Penalties are imposed in furtherance of some public policy, and as a means of securing obedience to law. Persons who incur these, are either in morals or law wrongdoers, and not simply unfortunate debtors unable to perform their pecuniary obligations' to whom the constitutional provisions against imprisonment for debt do not apply."

The petitioner seeks to distinguish the above Alabama case by asserting in his brief that "unless the party had used the toilets, he was under no obligation to pay." The ordinance, as heretofore quoted, simply provided that if the citizen did not have modern toilet facilities and connected with the sewage system that he "shall build and maintain certain types of 'sanitary privies.'" The use was presumed, in absence of sewage connection. The case is exactly in point with the within case, and the reasoning is by this court approved.

By reason of the foregoing, the writ of habeas corpus is denied.

JONES, P. J., and BRETT, J., concur.