QUAYLE, J.
Defendant appeals from judgments of conviction on both counts of a complaint which contains the following charges: Count One—On or about February 1, 1961, he carried on his profession of practice of the law in the City of Oakland without the license prescribed by section 5-1.02 of the Oakland Municipal Code thereby violating section 16240 of the California Business and Professions Code, a misdemeanor. Count Two—On or about February 1, 1961, he practiced law in the City of Oakland without the license prescribed by section 5-1.02 of the Oakland Municipal Code thereby committing a misdemeanor under the penal provisions of said code. He admits that he practiced law at that time and place without obtaining such a license. The only issues raised are:
1. Do the penal provisions in the Oakland Business Licensing Law render it invalid ?
2. Do the convictions constitute double punishment for a single act on appellant’s part?
Is the Oakland Business Licensing Law Valid ?
Appellant concedes that the City of Oakland may collect a tax from him for practicing law within the city and that a proper ordinance could be enacted to effect the raising of revenue by such means (In re Groves, 54 Cal.2d 154 [4 Cal.Rptr. 844, 351 P.2d 1028]). But he contends that the Oakland Business Licensing Law, purporting to be a revenue measure, is in fact a regulation of the practice of the law in that city.
The State of California has preempted the field of regulating and licensing persons entitled to practice law within the state (Bus. & Prof. Code, § 6000 et seq.). Under such circumstances no city can impose restrictions upon persons duly licensed by the state, except to require them to pay a tax for the privilege of maintaining within the city a place in which, or from which, they practice their profession. Any other restriction would conflict with the general law of the state (Cal. Const., art. XI, § 11; Franklin v. Peterson, 87 Cal.App.2d 727, 732 [197 P.2d 788]).
Municipal ordinances have been held invalid where qualifications or tests have been required, other than the possession *915 of a license to carry on the business or profession duly issued by the state. (See Horwith v. City of Fresno, 74 Cal.App.2d 443 [168 P.2d 767]; City & County of San Francisco v. Boss, 83 Cal.App.2d 445 [189 P.2d 32]; Lynch v. City of Los Angeles, 114 Cal.App.2d 115 [249 P.2d 856]; Agnew v. City of Los Angeles, 51 Cal.2d 1 [330 P.2d 385]; Agnew v. Culver City, 147 Cal.App.2d 144 [304 P.2d 788].) Therefore, we must accept as settled law that to uphold the validity of the ordinance in question it must be found to be, in fact, a purely revenue measure.
The ordinance professes, on its face, to be a revenue measure. Section 5-1.04 provides: “The term ‘license’ as used in this Article shall not be construed to mean a permit. The fees prescribed by this Article constitute a tax for revenue purposes, and are not regulatory permit fees.”
Section 5-1.02 referred to in both counts of the complaint provides: “License Required.—It shall be unlawful for any person either for himself or for any other person, to commence or carry on any business in this Article specified, in the City of Oakland, without first having procured a license from said city so to do, or without complying with any and all regulations of such business contained in this Article; and the carrying on of any business without first having procured a license from said city so to do, or without complying with any and all regulations of this Article, shall constitute a separate violation of this Code for each and every day that such a business is so carried on.” No other provisions of the article therein referred to affects the practice of law except section 5-1.29, which specifies the amount of license fee to be paid by professional men doing business within the city.
Section 16240 of the Business and Professions Code provides: “Engaging in business, etc., without license: Misdemeanor. Every person who commences or carries on any business, trade, profession, or calling, for the transaction or carrying on of which a license is required by any law of this State, without taking out or procuring the license prescribed by such law, is guilty of a misdemeanor.”
A city ordinance is a law of this state within the meaning of this section of the Business and Professions Code (formerly Pen. Code, § 435). In re Sweetman, 5 Cal.App. 577 [90 P. 1069]; In re Johnson, 47 Cal.App. 465 [190 P. 852]. But obviously a conviction under this provision of the state law would fail if the city ordinance relied on was invalid.
*916 Section 1-3.01 of the Oakland Municipal Code provides: “Violations, A Misdemeanor. Any person violating any of the provisions or failing to comply with any of the regulatory requirements of this Code, shall be guilty of a misdemeanor. Any person convicted of a misdemeanor under the provisions of this code shall be punishable by a fine of not more than $500.00 or by imprisonment in the City Prison for a period of not more than six months, or by both such fine and imprisonment. ’ ’
Appellant cites cases where local ordinances have been held to be invalid where municipalities have sought to punish under local law, acts which are punishable by state law. Analysis of these eases reveals that each was an attempt to invade a field which had been preempted by the general law of the state. In re Portnoy, 21 Cal.2d 237 [131 P.2d 1], involves an attempt by the County of Riverside to make possession of a slot machine a misdemeanor. Such was already declared by the state to be a misdemeanor under section 330a of the Penal Code. Pipoly v. Benson, 20 Cal.2d 366 [125 P.2d 482, 147 A.L.R. 515], involves an attempt by the City of Los Angeles to impose additional traffic regulations to control public roadways in conflict with the California Vehicle Code. This would invade a field fully preempted by the state. The Oakland ordinance has none of the objectionable features discussed in these cases.
Section 37100 of the Government Code empowers municipal bodies to “pass ordinances not in conflict with the Constitution and laws of the State or the United States.” Section 37101 of that code empowers them to “license, for revenue and regulation, and fix the license tax upon, every kind of lawful business transacted in the city, including shows, exhibitions, and games.”
In re Groves, 54 Cal.2d 154 [4 Cal.Rptr. 844, 351 P.2d 1028], at page 156, states: “Whether or not state law has occupied the field of regulation, cities may tax business carried on within their boundaries and enforce such taxes by requiring business licenses for revenue and by criminal penalties.” (Emphasis added.)
It has been pointed out that the Palm Springs ordinance involved in the Groves case differs from the Oakland ordinance in that the former expressly provides that “The criminal penalties provided for by this Code shall not be applied to businesses or professions requiring a State license as a condition precedent to doing business in the City, nor, as a *917 method of obtaining collection of the license fees.” The Oakland ordinance specifically makes doing business without a city license a misdemeanor and specifies the penalty.
Appellant contends that by this device he can be incarcerated for failure to pay the tax and thus prevented from practicing law although he is duly licensed to do so by the state. Claiming that this, in effect, is regulative he cited two eases. But they are readily distinguished from the case at bar. City of Sonora v. Curtin, 137 Cal. 583 [70 P. 674], declares that the city’s authority to license attorneys falls under its taxing power and not its police power; the ordinance in question provides that “every lawyer shall pay a license”; this is a tax upon the person because he is a lawyer, which makes it invalid. It is to be distinguished from a license tax upon the business of practicing law which would be valid. (In re Johnson, 47 Cal.App. 465, 469 [190 P. 852].) City of San Mateo v. Mullin, 59 Cal.App.2d 652 [139 P.2d 351], declares that a business license law that fixes the tax in an unreasonable or arbitrary manner or which inadequately defines the subject of the tax is vulnerable to attack; but it held the San Mateo business licensing law to be a valid revenue measure.
The Supreme Court, in the Groves case, indicated that the applicable law was set forth in the habeas corpus proceedings brought by an attorney jailed in Los Angeles for practicing law without paying that city’s business license tax. In re Galusha, 184 Cal. 697, 699 [195 P. 406] :
“As in the case of other professions or businesses which can be taxed by the state, the cases hold that the state can delegate to a municipality the power to impose a tax for the privilege of following the practice of the profession within the jurisdiction of the municipality. [Citations.] The imposition of an occupational tax by a municipality upon those engaged in the practice of the legal profession is not an interference with state affairs. The mere compliance with certain prerequisites, in return for which a license to practice law is granted by the state, does not place a person beyond the range of additional regulation of the conditions upon which the license may be used. The municipality, in imposing an occupational tax upon attorneys, is not interfering with state regulations, for it is not attempting to prescribe qualifications for attorneys different from or additional to those prescribed by the state. It is merely providing for an increase in its revenue by imposing a tax upon those who, by pursuing their profession within its limits, are *918 deriving benefits from the advantages especially afforded by the city. The tax is levied upon the business of practicing law, rather than upon a person because he is an attorney at law. [Citation.] A license to practice does not carry with it exemption from taxation.”
Concurrent with the decision in the Galusha case, the Supreme Court upheld a conviction under the penal provisions of the Los Angeles business license law in another case. (In re Nowak, 184 Cal. 701 [195 P. 402].)
In re Johnson, 47 Cal.App. 465 [190 P. 852], involved a situation similar to the case at bar. Johnson had been convicted under the Marysville business license law which contained penal provisions. The court held that it was immaterial whether or not the city had such power or attempted to assert such power because the ordinance was deemed to be a law of the state and could be enforced as a misdemeanor under section 435 of the Penal Code. This Penal Code section was later repealed and is now embodied in section 16240 of the Business and Professions Code. To the same effect see In re Diehl, 8 Cal.App. 51 [96 P. 98], and Ex parte Heylman, 92 Cal. 492 [28 P. 675], where city ordinances imposing business taxes and providing penal provisions for enforcing them were held to be valid.
Therefore the Oakland Business Licensing Law as set forth in its Municipal Code is valid and supports the conviction of Appellant for violating section 16240 of the Business and Professions Code as charged in Count One.
Does Conviction and Sentence on Count Two Constitute Double Punishment?
The record reveals that the trial court found appellant 'guilty on both counts of the complaint and fined him $105 or 20 days in the county jail on each count, to be served concurrently. The only conduct of appellant referred to in either count was practicing law in Oakland on or about February 1, 1961, without the license required under that city’s business licensing law. Having been convicted and sentenced for violating section 16240 of the Business and Professions Code in Count One, is it not double punishment to convict and sentence the Appellant under the penal provisions of the Oakland Municipal Code for the same conduct in Count Two?
Section 654 of the Penal Code provides that a single act by a‘defendant cannot be punished more than once.
“Punishment for two offenses arising from the same act is prohibited by the constitutional and common-law rule *919 against multiple punishment for necessarily included offenses [citations] and by Penal Code, section 654, which provides that ‘an act or omission which is made punishable in different ways by different provisions of this code may be punishable under either of such provisions, but in no ease can it be punished under more than one.’ . . . Whether a course of criminal conduct is divisible and therefore gives rise to more than one act within the meaning of section 654 depends on the intent and objective of the actor. If all the offenses were incident to one objective, the defendant may be punished for any one of such offenses but not for more than one.” (Neal v. State of California, 55 Cal.2d 11, 18, 19 [9 Cal.Rptr. 607, 357 P.2d 839].)
If appellant had been charged with violating the provisions of the business licensing law at some other time in Count Two, some justification for the second conviction might be found. But certainly the record here shows no such factual situation.
Section 654 of the Penal Code refers to “ [a]n act or omission which is made punishable in different ways by different provisions of this code ...” (emphasis added). Neither charge here is based upon violations of the Penal Code. Count One is based on the Business and Professions Code. Count Two is based on the Oakland Municipal Code. However, the legal principal involved is one based upon fundamental justice and the common law (People v. Tideman, 57 Cal.2d 574 [21 Cal.Rptr. 207, 370 P.2d 1007]). The legislative intent expressed in section 654 is to prevent double punishment whether the crime is defined in the Penal Code or any other law of the state that properly defines a crime.
‘‘If only a single act is charged as the basis of the multiple convictions, only one conviction can be affirmed, notwithstanding that the offenses are not necessarily included offenses. It is the singleness of the act and not of the offense that is determinative.” (People v. Knowles, 35 Cal.2d 175, 187 [217 P.2d 1].) Therefore the conviction and sentence on Count Two constitutes double punishment for the same act on appellant’s part and should not be permitted to stand.
The judgment and sentence in Count One is affirmed. The judgment and sentence in Count Two is reversed with directions that said count be dismissed.
Wagler, P. J., and Chamberlain, J., concurred.