## Ex parte CHASE.

No. 20429. Opinion Filed Jan. 14, 1930.

E. G. Wilson, F. S. Swindall, and C. F. Gowdy, for petitioner.

Byron Kirkpatrick, M. P. Howser, Christy Russell, and D. Clayton Arnold, for respondent.

RILEY, J. On December 9, 1927, upon a plea of guilty, a judgment was rendered in the county court of Tulsa county under the provisions of article 3, ch. 70, C. O. S. 1921, in bastardy proceedings, against petitioner. By the judgment petitioner was directed to pay the prosecutrix, Irene Byrnes the sum of $750 for the support of the child; $50 was directed to be paid, and was paid instanter, and the remainder in monthly installments of $50 each. The petitioner was further ordered to secure the unpaid installments by the execution of a note and mortgage upon designated real estate and to furnish bond conditioned upon the performance of the obligation. Petitioner executed and delivered the note, mortgage, and bond and paid the installments as they fell due for a period of five months; thereafter he defaulted.

On June 11, 1928, petitioner filed a motion to vacate the judgment of December 9, 1927, and for leave to withdraw his plea of guilty. This motion was overruled; petitioner attempted to appeal to this court. His purported appeal was dismissed. Chase v. State, 135 Okla. 290, 275 Pac. 633.

Petitioner in the meantime was cited for contempt for failure to obey the order and judgment of the county court first entered, by paying the installments when due. Petitioner pleaded his financial inability to pay, and, further, that the judgment was void for want of jurisdiction. A trial to a jury was had and a verdict of guilty rendered.

In the meantime petitioner applied to this court in cause No. 19350, then pending, for a writ of prohibition to effect a stay of proceedings in the county court for contempt. A rule to show cause was entered and, upon hearing, abated. By the contempt judgment, petitioner was committed to jail until he paid the sum of $200, then due on installments. He again attempted to appeal to this court from the judgment in contempt, and executed a supersedeas bond securing his release from custody pending appeal. This appeal was dismissed on April 9, 1929. Chase v. State, No. 20200, 136 Okla. 80, 276 Pac. 486. Upon receipt of mandate below an alias commitment was issued and executed by the incarceration of petitioner. Whereupon petitioner, after making application to the district court of Tulsa county for habeas corpus, filed his petition herein and upon presentment of same to the Vice Chief Justice, a rule to show cause was granted and the petitioner was released upon the execution of a bond in the sum of $1,000, conditioned upon his abiding the order and judgment herein made.

Briefly, it is the contention of petitioner that he is imprisoned for debt in violation of his constitutional rights and in excess of the jurisdiction of the county court by whose order he was committed.

A broad view of power and procedure in the enforcement of judgments in filiation is expressed in 7 C. J. 1003, sec. 149:

"Ordinarily the mode of enforcing an order of filiation and maintenance is by sci. fa. or by action of debt. In some states, however, the practice is to enforce such an order by execution, and in others to commit defendant to prison until he complies with the order."

"Sec. 150. The imprisonment of a defendant is permissible as a means of enforcing an order of maintenance, where the statute so authorizes * * * such order should not permit the restraint of defendant after the requested bond has been furnished and approved. * * *" People v. Wing, 115 Mich. 698, 74 N. W. 179.

Our statute provides, sec. 8066, C. O. S. 1921:

"If the accused be found guilty, he shall be charged with the maintenance of the child in such sum or sums, and in such manner as the court shall direct, and with the cost of suit, and execution may issue im-

mediately, and afterwards from time to time for the collection of any sum or sums ordered to be paid, and in addition thereto the court shall require the defendant to secure the performance of the order of the court, in such manner as the court shall direct."

It is evident that our statute does not authorize imprisonment as a means of enforcing such an order of maintenance. It may be that a defendant could be coerced into giving security for payment, as in Wheeler Case, 34 Kan. 96, 8 Pac. 276, but, as applied to the facts presented, full compliance with the judgment, as to securing same by note, mortgage, and bond, and in view of the statute affirmatively providing for execution immediately and from time to time for collection by "execution," we are bound to hold that contempt is not one of the remedies available to secure the amount of the award. It is contemplated that there may be an action upon bond against principal and surety, suit upon promissory note as well as foreclosure of real estate mortgage.

The Supreme Court of Oklahoma Territory in Ex parte Comstock, 10 Okla. 299, 61 Pac. 921, dwelt upon this subject:

"Bastardy proceeding under our statute is a special proceeding in the nature of civil action, and original jurisdiction is conferred on the probate court in such cases. * * * Nowhere in this chapter is any authority given to imprison for failure to secure the judgment. If such power exists in the court, it could only be in contempt proceedings for failure to comply with the orders of the court, in which case the judgment debtor would be entitled to a day in court and a hearing before he could be committed to prison. * * *"

Most of the states whose statutes we have been enabled to examine contain provisions authorizing the courts having jurisdiction of bastardy proceedings to enforce their judgment by imprisonment of the judgment debtor. **Our statute contains no such provision and confers no such power. If the Legislature has not seen fit to give this authority, the courts have no right to assume it.**

In West Virginia, in 1896, the Supreme Court of Appeals considered a case apparently identical with the case at bar and apparently under a very similar statute, and held in accord with our view. We quote, Barber County Court v. O'Neal, 26 S. E. 182:

"This proceeding is a statutory one, and the mode of procedure is laid down step by step from the accusation or complaint made by the woman to the judgment rendered by the court, and the bond required to secure its performance, and when the judgment is rendered and the bond executed to insure its performance is executed with security approved by the court, it is an ended cause. It is true sec. 5, ch. 80, of the Code provides the mode of obtaining judgment on the bond from time to time against the father and his sureties or their personal representatives for the money due, with lawful interest thereon, but the statute nowhere provides for the rearrest of the father in case he and his sureties become insolvent, and it nowhere provides that a rule may issue, as it did in this case, against the father, to show cause why he should not be required to execute a new bond for the maintenance of said child, or he be committed to jail for his failure to obey the order of the court in the payment of the money in accordance with the judgment. The statute having pointed out the only mode for the enforcement of the judgment by motion on the bond under the fifth section, the proceeding in this case by rule must be regarded as unauthorized, and the defendant appears to have been arrested and imprisoned without due process of law and the judgment upon said rule was rendered by court that had no jurisdiction of the party or of the subject."

In McKittrick v. Cahoon, 89 Minn. 383, 95 N. W. 223, 99 A. S. R. 606, 62 L. R. A. 757, that court considered a situation where, by an order in bastardy proceedings, the putative father was required to pay a monthly stipend for the child's support, and, upon his default a judgment for the total sum due was obtained; it was held the rights involved under the order of filiation were merged in the judgment, and the debt evidenced by the final judgment was not excepted from the operation of the bankruptcy acts. That court said:

"But there are no processes, and there could be none, upon constitutional grounds in this state, by which a judgment for money only could be enforced by imprisonment even though the judgment is rendered for amounts due on an order of filiation, which fixes the nature of the obligation without reference to the character of the claim upon which it is founded. After the judgment, obviously there cannot be two distinct claims; and sound policy has led to the adoption of the rule that where a precedent liability is made the basis of a final money judgment, the rights of the parties are merged in what the law treats as the higher obligation. Freeman, Judgm. secs. 215-217. In application of this principle to the question presented here, it must be held that, by obtaining the judgment, the plaintiff elected to stand thereon

alone, with all the rights acquired thereby, and subject to all the burdens which insolvency and bankruptcy laws may impose."

Ex parte Lowery, 107 Okla. 132, 231 Pac. 86, is cited and relied upon by respondent. It is not analogous, but is distinguished from the case at bar and classified with such circumstances as presented in the Kansas case cited. In the Lowery Case the defendant refused to give security as it was his statutory duty to do. Moreover, by statute the power was invested in the court to require of him the bond. He defied the court, with usual result. Whereas, in the case at bar the petitioner at the time of judgment did everything adjudged of him. He gave notes, mortgage, bond and even possession of a home for prosecutrix. His subsequent failure to pay was not a defiance of the court of authority (lese majesty), but simply a default in debt—a breach of the bond—a condition warranting foreclosure of the mortgage given to secure the judgment. But for all of which no power existed to imprison him.

The salient point decided in the Lowery Case is, as applied to bastardy cases, "that where a defendant fails to supersede a judgment, he may be cited for hearing for contempt and punished therefor if found guilty". That is good law. We adhere to it.

While, as recited in the Lowery Case, there is some similarity between alimony and an award in bastardy, such as a nonjury matter as to amount and manner of payment, yet there are many differences. As applied to alimony, by sections 506, 507, C. O. S. 1921, the award may be enforced by imprisonment specifically authorized by statute (attachment and contempt), where there is no such provision as to an award in bastardy. The statute governing each relief is reasonable and adequate and ought to be applied as respectively provided in text and not through imaginary similarities or superstructures built upon the two distinct remedial provisions; one in a court of equity (district), the other in law (county) under special proceedings.

The respondent contends the judgment of the county court in res judicata. We cannot give assent. Certainly there was no jurisdiction to render the particular judgment, i.e., judgment in contempt to coerce payment of this debt as secured, in compliance with the judgment of the court. The doctrine of res judicata applies only to judgments of such courts of competent jurisdiction and not to judgments rendered without jurisdiction. The county court lacked power, in contempt proceedings, to coerce payment of the final judgment in bastardy as secured. Ex parte Williams, 102 Okla. 170, 228 Pac. 494.

Not only was there lack of jurisdiction, but in fact jurisdiction was specifically prohibited by the highest authority, the Constitution, sec. 13, article 2: "Imprisonment for debt is prohibited, except for the nonpayment of fines and penalties imposed for violation of law". Our court has ever been in accord with the weight of authority that bastardy proceedings are civil in their nature and governed by rules of procedure applicable to civil actions generally. Since the proceeding is so, it would seem but reasonable that subsequent to judgment and the financing of it as by law provided, then, at least no longer could the judgment debtor be imprisoned for the debt under the theory, which otherwise must be embraced, that the proceedings are criminal in nature and the amount of judgment is as a fine or penalty imposed for the violation of law as contemplated in the constitutional provision quoted.

The writ of habeas corpus is awarded.

HUNT, CLARK, HEFNER, CULLISON, SWINDALL, and ANDREWS, JJ., concur. MASON, C. J., and LESTER, V. C. J., absent, not participating.

Note.—See under (2) 3 R. C. L. p. 767; R. C. L. Perm. Supp. p. 800. See "Bastards," 7 C. J. § 150, p. 1004, n. 4. "Constitutional Law," 12 C. J. § 448, p. 940, n. 27.