[Civ. No. 42019. Second Dist., Div. Two. June 29, 1973.]

TED BUSHMAN, Petitioner, v.
THE SUPERIOR COURT OF SANTA BARBARA COUNTY,
Respondent;
SOMA BUSHMAN, Real Party in Interest.

**COUNSEL**

Belcher, Henzie & Biegenzahn and John S. Curtis for Petitioner.

George P. Kading, County Counsel, and Bruce William Dodds, Deputy County Counsel, for Respondent.

Milton R. Gunter for Real Party in Interest.

**OPINION**

**ROTH, P. J.**—In a divorce action between Ted and Soma Bushman, attorneys practicing in Santa Maria, orders pendente lite were made providing for spousal and child support for three children, the oldest child being eight, of their marriage, requiring Ted to pay $50 per month for the support of each child and directing him if he elected, to occupy certain community premises which he elected to and did occupy, to pay monthly installments of $256.61 on a mortgage which encumbered the community premises.

On January 26, 1973, after a full hearing, the trial court on evidence substantial in all respects, judged Ted to be in contempt for nine separate violations: five for failure to make the child support payments and four for failure to make the mortgage payments. The court found that: Ted was in court on the day the respective orders were made; he had specific knowledge of their context; the orders had been personally served on him; he had the ability to pay on the occasion of each of the nine separate defaults and in respect of each wilfully failed to comply. Failure to comply is not in dispute. The trial court said: "The Court can only conclude that the respondent does not wish to obey the Court's orders . . . . There has been no request for modification. There simply has been a course of conduct that has ignored the orders completely. . . . [R]espondent will be sentenced to the County Jail for a period of four days as to each separate contempt, four contempts on the failure to make mortgage payments, September 1, October 1, November 1, December 1 of 1972, five contempts for failure to make child support payments, September 15, October 15, November 15, December 15 of 1972 and January 15 of 1973. There are nine separate contempts. . . ."

Ted immediately sought relief by way of petition of a writ of habeas corpus raising jurisdictional and constitutional questions filed in this court and in the Supreme Court without filing a record of the contempt hearing, and each petition was severally denied.

Thereafter, on April 11, 1973, Ted filed and there is now before this court, a petition for writ of certiorari predicated upon a complete record of contempt proceedings held as stated on January 26, 1973. The petition "challenges the sufficiency of the evidence on the issue of ability and . . . the propriety of the judgment . . . as to the default in mortgage payments."

We have examined the record. It shows that the trial court exercised considerable liberality under the rules of evidence in permitting Ted to present his defense which, among other things, showed that Ted was hospitalized for a week as a consequence of a major operation and that his ability to earn was interfered with by harassment on the part of Soma. The court nevertheless, after minute analysis of all the evidence made in lengthy argument, found all the jurisdictional facts required for prosecution of an order to show cause and upon substantial evidence also found Ted's ability to pay and his wilful failure to comply.[1]

---

[1]Among other things, the evidence upon which the trial court predicated his finding of ability was the fact that petitioner opened a bank account in the amount of $914.21 on November 2, 1972; borrowed $1,299.60 on December 1, 1972, from the Santa Barbara National Bank; and an application for the loan showed that he was a practic-

At the time the trial court imposed the sentence of contempt it said with respect to the child support payments in pertinent part: ". . . Although the order was made on June 22, the Court purposely delayed the first payment until September 15 of 1972 to permit the respondent to get his feet on the ground financially in order to make the payments which were minimal in nature judging from the standard of living of the parties. . . . respondent . . . has made none of the payments other than an involuntary payment by execution upon his bank account of $127.00. That is the payment due September 15, 1972 was not made by respondent, petitioner executed upon the bank account, recovered $127.00 and there remains due $23.00 on that payment. The payment due October 15, 1972 of $150.00 was not made and has not been made. . . . The payment due November 15, 1972 of $150.00 was not paid. The payment due December 15, 1972 of $150.00 was not made. The payment due January 15, 1973 of $150.00 was not made. Respondent has wilfully refused to make any such payment. The Court finds that on each occasion and on each date, September 15, 1972, October 15, 1972, November 15, 1972, December 15, 1972 and January 15, 1973, he had the financial ability to make each payment. . . . The Court finds him guilty of five separate contempts. . . ."

■ We are satisfied the court was amply justified in holding Ted in contempt for five separate violations of the order which specifically required him to pay $50 a month for each minor child, or a total of $150 per month for all three.

The second ground of the challenge to the validity of the orders, to wit: failure to make mortgage payments, requires some discussion.

The specific order requiring mortgage payments made on June 22, 1972, is as follows:

"The Court also orders that respondent is permitted to occupy the premises at 217 West Cook Street, Santa Maria, California, on the following terms and conditions: He is ordered to pay the delinquent monthly mortgage payments for the months of May and June 1972, together with late charges thereon, in the total sum of $533.22 together with delinquent real property taxes thereon in the sum of $1,299.60 plus penalties, or the

ing attorney with gross receipts of $100,000 a year; purchased office furniture and equipment in January 1973 in the amount of $1,500; during the period involved maintained a law office and secretary; had a discussion with the receiver of community property in respect of the purchase of camera equipment; wrote a letter to Soma, suggesting that he would make the support payments if given additional visitation rights; and when previously advised he would go to jail for contempt if he didn't make a certain payment, raised the money necessary to make the payment. (*Bailey* v. *Superior Court*, 215 Cal. 548, 555 [11 P.2d 865].)

combined approximate sum of $1,832.82. In addition thereto respondent is ordered to pay all future monthly mortgage payments and real and personal property taxes thereon. Respondent shall not surcharge petitioner's community interest in said property in connection with any of the foregoing payments. For the limited purpose of making payment upon said arrearages in mortgage payments and taxes respondent is authorized to withdraw all funds from an income account in the approximate sum of $895.00 standing in the name of Ted Bushman at Mid-State Bank, Santa Maria, California, and respondent is ordered to pay the then remaining approximate balance of $940.82 on account of said delinquent mortgage payments and taxes on or before October 28, 1972. All past and future mortgage payments are to be paid to Crocker Citizens National Bank . . . with all future monthly payments over and above said arrearages to be made in the sum of $256.61 and to be paid on or before the 1st day of each month commencing July 1, 1972. In the event that respondent sublets any portion of the premises he shall retain any profits therefrom."

■ Ted argues that use of the contempt process for noncompliance with the orders in respect of the mortgage payment is in violation of article I, section 15 of the California Constitution, since use of the contempt process to enforce mortgage payments equates with the use of process to imprison for debts. (*Bradley* v. *Superior Court* (1957) 48 Cal.2d 509 [310 P.2d 634]; *In re Fontana,* 24 Cal.App.3d 1008 [101 Cal.Rptr. 465].)

Ted was, as has been made to appear, held in contempt in respect of the four separate defaults in making mortgage payments as required by the court order excerpted above. The question thus presented is whether the mortgage payments were debts within the definition of *Bradley* and *Fontana* or whether they were and are part of and by way of spousal support. We think they were an integral part of a pendente lite plan for spousal support.

Section 4358 of the Civil Code, formerly section 137.6 was added in 1970 (effective July 6, 1970): "In any proceeding under this part, upon a determination that payment of an obligation of a party would benefit either party or a minor child, the court may order one of the parties to pay the obligation or any portion thereof, directly to the creditor. The creditor shall have no right to enforce the order nor shall his rights be affected by such determination."

In a habeas corpus proceeding *In re Hendricks,* 5 Cal.App.3d 793 [85 Cal.Rptr. 220], decided on March 23, 1970, and obviously tried before

the effective date of added Civil Code section 4358, at pages 796, 797, 798, in treating a similar situation, the court said: "It is well settled that an obligation to pay alimony and child support is not a 'debt' within the constitutional guaranty against imprisonment for debt. (*Miller* v. *Superior Court,* 9 Cal.2d 733, 736-737 . . . ; *Bradley* v. *Superior Court,* 48 Cal. 2d 509, 519 . . . ; *Thomas* v. *Thomas,* 14 Cal.2d 355, 357 . . . ; *Bailey* v. *Superior Court,* 215 Cal. 548. . . .)

"., .. . . . . . . . . . . . . . . . .

"From the record before us the order . . . requiring the petitioner to pay past community debts and obligations was a proper award of alimony pendente lite. It was not an order to pay a contractual obligation or 'debt' arising out of an adjustment of property rights. The question of the division of property was not before the trial court at the hearing to determine alimony pendente lite'. . . . We construe it as being intended to concede that, if those debts were not promptly paid, the wife would be impeded in her efforts to live on the $300 per month allowed to her for the future, and to avoid the necessity of an evidentiary hearing to establish that fact. As such, the order based on that stipulation was an order for her support and maintenance, enforceable by contempt."

The mortgage payments herein ordered were orders pendente lite in respect of a business property belonging to both parties which had been and could be occupied by practicing lawyers, to wit: Ted and Soma. Ted was not ordered to occupy the premises. He elected to do so. Either of the two could have occupied the mortgaged premises for that purpose and assumed the mortgage payments in lieu of rent or the premises could have been rented. Ted and Soma were each actively engaged in the practice of their profession, and it is obvious from the orders made that each was expected to contribute to the support of their three children. The trial court, when it made the order for child support on June 22, 1972, the same date mortgage payments were ordered, deliberately delayed the first payment of the child support orders directed to Ted until September 15, 1972, a period of three months, to enable Ted to get his professional house in order and restore his ability to continue what the record shows had been a fairly affluent practice. The context of the order requiring monthly and incidental payments to prevent default on the mortgage and the right to sublease and retain rentals granted therein, indicates that the use of the Cook Street premises on the terms fixed by the trial court was not only in lieu of a fixed rental but was also calculated to enable Ted to maintain his practice with as little interruption as possible. There is nothing in the order which makes any attempt to adjust the property rights

of the parties. It would strain credulity to believe that the trial court set aside community property for Ted's use for any reason other than support accountability. To permit Ted at his option to occupy and sublease the premises without support accountability would in effect give him the opportunity to make child support payments, with Soma's portion of the community assets by the simple expedient of not making the mortgage payments in whole or in part, thus reducing Soma's one-half of the equity in the Cook Street premises with the opportunity to increase his own asset position. To forestall any such exploitation of the Cook Street premises, the trial court, with calculation, postponed child support payments for a period of three months.

Further, if Ted could not or did not intend to make the mortgage payments he was under the implied obligation to vacate.

Counsel for Ted raised no question in the trial court that the contempt judgment for failure to make the mortgage payments was imprisonment for debt. He argued: ". . . I am . . . concerned . . . about that mortgage payment because the Court did not say flat out that he was going to have to pay those until further order of the court, the Court gave him an alternative and whether or not that alternative in fact is the remedy rather than some kind of punishment presents an interesting question, in this matter. As I would understand that order, he would pay the mortgage payment or the alternative was that he would lose possession. It was not an order that you are hereby ordered until further order of the Court to make that payment. The order was, you pay it and the alternative is you lose possession. . . ."

We do not have before us an integrated or any other property settlement agreement as was the case in *Bradley* and *Fontana* nor is there any question in respect of property rights other than spousal support decided by the orders in question. We think Civil Code, section 4358 and *Hendricks* are decisive.

The order to show cause heretofore issued is discharged and the petition for a writ of certiorari is hereby dismissed.

Fleming, J., and Compton, J., concurred.

A petition for a rehearing was denied July 18, 1973, and petitioner's application for a hearing by the Supreme Court was denied August 22, 1973. Clark, J., did not participate therein.