**Sherry POTTER, Petitioner,**

v.

**Alma WILSON, District Judge, Respondent.**

**No. 54145.**

Supreme Court of Oklahoma.

April 1, 1980.

Rehearing Denied May 5, 1980.

Gary L. Brooks, Oklahoma City, for petitioner.

Stockwell & Albert by Gregory W. Albert, Norman, for respondent.

OPALA, Justice:

The issue tendered by this proceeding is: When by the terms of the divorce decree title to a jointly-owned enterprise is set apart to one spouse [Wife] who is adjudged to assume the outstanding indebtedness of the business so awarded her and to hold the other spouse [Husband] harmless from that class of jointly-incurred obligations, will contempt lie against the assuming spouse in default to enforce her liability for the court-ordered indemnity? In the narrow context so phrased the question is one of first impression. Recognizing that its early settlement likely will serve an important and urgent statewide need, we assume original jurisdiction to pronounce our answer in the negative. Our holding here deals with the enforceability, by contempt, of but *one* class of judicial decisions—*the adjudicated liability, at law or in equity, for payment of money in general.* It does not apply to a court order that directs payment

of money from a specified fund, or from some other identified personal-property source, then in existence, by one who is in control of that source. If a debt be ordered paid as integral part of an award for support alimony, contempt becomes a permissible mode of enforcement.

▮ For his indemnity claim Husband relies on the provision of the divorce decree which generally orders Wife to hold him harmless from "any indebtedness" of the business that was awarded her.[1] His application for contempt citation charges her with default in paying four different obligations, only one of which has been partially satisfied by Husband. Neither party has raised, and we need not decide here, the question whether Wife's court-ordered indemnity became enforceable when she allowed the obligation ordered to be assumed by her to fall in default or when that obligation came to be satisfied by the Husband's payment. The answer to that question depends, of course, on whether the tersely-worded clause of the decree created *indemnity against liability or indemnity against loss.* 15 O.S.1971 § 427(1) and (2). The former gives rise to a claim against the indemnitor on his default, while the latter is litigable only after the indemnitee has satisfied the delinquent obligation.[2]

▮ As a general rule there is *no* authority for executing an adjudged civil liability for payment of money against the body of the obligor.[3] The executory process of imprisonment by means of *capias ad satisfaciendum* (ca.sa.), which at common law originally lay only in trespass *vi et armis* and later came to be extended by statute to other cases,[4] is not available under any Oklahoma legislative enactment to one who seeks satisfaction of an adjudicated obligation to pay money.[5]

▮ The fabric of applicable executory process would not be quite complete without allusion to our fundamental law's interdiction of imprisonment for debt. Art. 2 § 13, Okl.Con. Although in the context of this constitutional prohibition "debt" is sometimes restrictively defined as limited to obligations arising *ex contractu*[6] and hence as a technical term not coextensive in meaning with "judgment debt"[7], it is clear that where the money judgment-obligee is left by law without statutory warrant for body attachment in aid of execution, resort to the coercive process of contempt becomes impermissible. The obligee simply must not be allowed by indirection to do that which he may not do directly.[8] In short,

---

1. The decree provides in pertinent part that ". . . [Wife] . . . is . . . awarded all the assets and all the corporate stock and sole ownership of Potter Billiards, Inc. free and clear of any claims of the . . . [Husband], but subject to . · . . [Wife] assuming any indebtedness thereon, including accounts payable, if any, and holding . . . [Husband] harmless therefrom."

2. *Chicago, Rock Island & Pacific R. Co. v. Davila,* Okl., 489 P.2d 760, 764 (1971).

3. The statutory definition of civil "execution" does not include body attachment. 12 O.S. 1971 § 732. *By the terms of 12 O.S.1971 § 902 the use of body attachment to enforce "the recovery of money" is expressly withheld from the arsenal of obligee's available weapons.* See Millar, Civil Procedure of the Trial Court in Historical Perspective, pgs. 456, 457 (1952).

4. *Forsythe v. Washtenaw Circuit Judge,* 180 Mich. 633, 147 N.W. 549, 550 (1914).

5. Oklahoma has abolished all common-law distinctions in the forms of action. 12 O.S.1971

§ 10. An order, directed to a judgment-debtor, to apply specified property or funds "toward . . . satisfaction of . . . judgment" may be enforced by contempt. 12 O.S.1971 § 850; *Freeman v. Heiman,* 426 F.2d 1050 (10th Cir. 1970); cf. *Proffit v. Proffit,* 105 Ariz. 222, 462 P.2d 391, 393 (1969).

6. *Ex parte Small,* 92 Okl.Cr. 101, 221 P.2d 669, 678 (1950); *Hollie v. State,* Okl.Cr., 386 P.2d 333, 334 (1963); Millar, Civil Procedure of the Trial Court in Historical Perspective, pgs. 456, 457 (1952).

7. In a broader sense "debt" may be viewed as synonymous with *any* "obligation" or "liability". *School Dist. No. 2, Consolidated, Pushmataha County v. Gossett,* 140 Okl. 243, 283 P. 249, 252 (1929).

8. The terms of 12 O.S.1971 § 902 expressly exclude judgments for "recovery of *real property*" from execution *via* body attachment. We held that contempt was equally unavailable for enforcement of an order directing a spouse to

payment of a civilly adjudicated claim for money, whether "debt" *stricto sensu* or not, cannot be coerced either by commitment for contempt or by execution against the body unless the court-imposed liability sought to be satisfied falls within a class of statutorily authorized exceptions which do not contravene the constitutional interdiction of imprisonment for debt.[9]

A decree of divorce ordinarily contains a veritable cluster of adjudicated claims for money payment which possess different characteristics for enforcement classification. Maintenance-related monetary awards for alimony in the strict canonical sense of the civil-law's "alimentum", ·meaning "provision of food, clothing, habitation and other necessities for support" [10], either designated or intended as support alimony, temporary or permanent, spousal or filial, are excluded from the definition of "debt". These excluded categories may be enforced by contempt because of express statutory authority.[11] A court-decreed allowance for services rendered by an attorney in a matrimonial suit may be deemed an "accessory" to, and in the same category as, obligations to pay support alimony.[12] With respect to child support the exception has received a somewhat strict and narrow application. It is merely coextensive with the period of the child's minority. After the child has attained majority installments

which accrue and remain unpaid may not be enforced by contempt proceedings.[13] On the other hand, our decisional law is equally clear that when the object of the recovered liability for payment of money is related not to support proper but rather to an adjustment or division of conjugal assets, recourse to body attachment or to the coercive process of contempt may not be had to enforce the performance of an adjudicated spousal obligation.[14]

There is neither indication nor intimation here that the indemnity liability sought to be enforced has some *nexus* to Husband's support. The record before us demonstrates rather clearly that it was an integral part of the conjugal-property adjustment scheme. The underlying obligation whose payment is attempted to be coerced by contempt is a business debt. The indemnity which the divorce court superimposed upon it did not alter or transmute the essential character of that debt. It merely reallocated between the affected spousal obligors the incidence of their liability for one class of jointly-incurred indebtedness. We are therefore constrained to hold the court-ordered indemnity may not be enforced by contempt. The only enforcement process available to indemnitee-Husband is by civil execution after the accrued liability has been judicially "reduced" or "commuted" to judgment.[15]

sell *real property* and apply the proceeds toward satisfaction of conjugal debts. *Pierce v. Pierce*, Okl.App., 605 P.2d 1172 (1979).

9. *Allen v. State*, 186 Okl. 528, 99 P.2d 141, 142 (1940); *Ex parte Chase*, 141 Okl. 75, 284 P. 294, 296 (1930).

10. *Stone v. Stidham*, 96 Ariz. 235, 393 P.2d 923, 925 (1964); *Johnson v. Johnson*, Okl., 460 P.2d 954, 956 (1969).

11. 12 O.S.Supp.1976 § 1276; 10 O.S.1971 § 78; *Ex Parte Bighorse*, 178 Okl. 218, 62 P.2d 487, 489 (1936); *Ex parte Lowery*, 107 Okl. 132, 231 P. 86, 87 (1924); *Ex parte Chase*, supra note 9; *Lemons v. Lemons*, 205 Okl. 485, 238 P.2d 790, 793 (1951); see also *Perkins v. Superior Court*, 100 Ariz. 186, 412 P.2d 476, 477 (1966); *Collins v. Superior Court in and for Maricopa County*, 48 Ariz. 381, 62 P.2d 131, 139 (1936).

12. *Turman v. Turman*, Okl., 438 P.2d 488, 490–91 (1968).

13. *Reynolds v. Reynolds*, 192 Okl. 564, 137 P.2d 914, 917 (1943); *Lowry v. Lowry*, 189 Okl. 650, 118 ·P.2d 1015 (1941); *McCartney v. Superior Court of Okmulgee County*, 187 Okl. 63, 101 P.2d 245 (1940); annotation in 32 A.L.R.3d 888 (superseding, in part, 172 A.L.R. 869, 893).

14. *Huchteman v. Huchteman*, Okl., 557 P.2d 427 (1976); *Alexander v. Alexander*, Okl., 526 P.2d 934 (1974); see also *Stone v. Stidham*, supra note 10; and *Bradley v. Superior Court*, 48 Cal.2d 509, 310 P.2d 634, 641 (1957); *Proffit v. Proffit*, supra note 5.

15. See *Reynolds v. Reynolds*, supra note 13. If the payment of a debt is made an integral part of support alimony award, the obligation is treated as having the legal characteristics of alimony. *Shotwell v. Shotwell*, Okl., 603 P.2d 1140 (1979); cf. *Bushman v. Superior Court of Santa Barbara County*, 33 Cal.App.3d 177, 108 Cal.Rptr. 765 (1973).

The respondent-judge is prohibited from proceeding further to coerce by contempt Wife's performance of her decree-imposed indemnity obligation.

LAVENDER, C. J., IRWIN, V. C. J., and WILLIAMS and HODGES, JJ., concur.

BARNES, SIMMS, DOOLIN and HARGRAVE, JJ., dissent.

HARGRAVE, Justice, dissenting:

Title 21 O.S.1971 § 565 defines an indirect contempt of court as "wilful disobedience of any process or order lawfully issued or made by court . . .". The trial court's order was issued pursuant to an express duty statutorily imposed by 12 O.S.1975 § 1278 which directs: ". . . the court shall make such division [of property] between the parties as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof, to pay such sum as may be just and proper to effect a fair and just division thereof." The power to punish for contempt is expressly conferred by Okla.Const. Art. II § 25, and has been held to have a dual purpose; one, punishment for disrespect of court or its order, and secondly, as a means of compelling performance of a duty required by the court. *Burnett v. State, 8 Okl.Cr. 639, 129 P. 1110 (1913)*. The prohibition against imprisonment for debt found in Okla.Const. Art. II § 13 is not in the least offended by the contempt power conferred under 21 O.S.1971 § 565, because that statute, as noted, limits a punishable indirect civil contempt to the offending party who has "[willfully disobeyed] any process or order lawfully issued".

Properly considered in its historical context, the fact that the contemnor could have complied, had the means by which to comply with the court order, and fails to do so at once proves a willful disobedience necessary to the statutory definition of contempt and removes it from the realm of the constitutional prohibition against imprisonment for debt.

Thus, the majority errs in failing to recognize the inherent power of the court to punish for contempt and at once prohibits the contempt trial which is the only proper forum for determination of the two relevant facts necessary to establish that contempt, which are: Was the order clear enough to give the party charged reasonable notice of the order's intent, and secondly, was the disobedience thereof willful in that the charged party could have, but refused, to comply.

I feel the majority's rationale is as applicable to 12 O.S.1971 § 850 as it is to the instant proceeding, which fact is an indicia of the magnitude of the error promulgated here, for as stated in the dawning days of our Republic in *Respublica v. Oswald, 1 Dall. 319, 329, 1 L.Ed. 155, 160 (1788)*, by Chief Justice McKean, cited in part in *Smith v. Speed, 11 Okl. 95, 66 P. 511 at 515*:

> ". . . Some doubts were suggested, whether even a contempt of the court was punishable by attachment; but not only my brethren and myself, but likewise all the Judges of England, think, that without this power no court could possibly exist;—nay, that no contempt could indeed, be committed against us, we should be so truly contemptible. The law upon the subject is of immemorial antiquity; and there is not any period when it can be said to have ceased, or discontinued . . .".

I therefore DISSENT, and would refuse to assume original jurisdiction in this matter.

I am authorized to state that BARNES, SIMMS and DOOLIN, J., concur in the views expressed herein.