2010 OK CIV APP 106

**In re The MARRIAGE OF BOECKMAN.**

**Melody Boeckman, Petitioner/Appellee,**

**v.**

**Brian Boeckman, Respondent/Appellant.**

**No. 106,442.**

Court of Civil Appeals of Oklahoma, Division No. 1.

Sept. 17, 2010.

N. Scott Johnson, Tulsa, Oklahoma, for Petitioner/Appellee.

C.W. Daimon Jacobs, Tulsa, Oklahoma, for Respondent/Appellant.

KENNETH L. BUETTNER, Presiding Judge.

¶ 1 Respondent/Appellant Brian Boeckman (Husband) appeals from a September 24, 2008 judgment finding Husband guilty of indirect contempt for failure to pay alimony and attorney fees awarded to Petitioner/Ap-

pellee Melody Boeckman (Wife) in a temporary order in the parties' divorce proceeding. After Husband filed this appeal from the contempt judgment, Husband and Wife entered an agreed dissolution decree in which they agreed that the contempt judgment would not merge into the decree. The record supports the trial court's finding of clear and convincing evidence that Husband wilfully refused to pay a lawful order. We affirm the judgment.

¶ 2 Wife filed her Petition for Dissolution of Marriage January 5, 2005. Wife filed an Application for Citation for Contempt August 6, 2008, in which she asserted that since the December 20, 2006 temporary order, Husband had failed to pay any of the amounts ordered. Wife charged that Husband owed $90,000 in temporary support alimony and $2,000 in temporary attorney fees. Wife contended that Husband had the ability to pay and had willfully refused to pay. The certificate of service indicates the application was hand-delivered to Husband in the Tulsa County Courthouse.[1] The trial court docket sheet indicates that on August 6, 2008, Husband was served with "paperwork from" Wife in open court, Husband was arraigned that day on the contempt charge, he entered a not guilty plea, and requested a jury trial. The docket entry for that date shows the trial on contempt was set for August 28, 2008.

¶ 3 Husband filed a Motion to Dismiss August 28, 2008. Husband asserted the court was without jurisdiction because no "citation" had been filed. Husband also asserted that "(f)ollowing the 12–20–06 hearing (Wife) failed to memorialize the courts orders, . . . ." Husband also claimed that in her application, Wife failed to allege Husband acted wilfully. Husband finally asserted Wife's Application for Contempt Citation included nothing more than Wife's "recall and representations" of the December 2006 temporary order, which Wife failed to file or serve on Husband.[2]

---

1. Husband's brief admits the application was delivered in open court while he was there for a pre-trial conference in this case.

2. In his Motion to Dismiss, filed the morning of the hearing, Husband did not request additional time to prepare, nor request a jury trial. He did request a jury trial at his arraignment August 6, 2008, and the jury fee was to be paid by August

¶ 4 Hearing on the contempt application was also held August 28, 2008. Husband repeated his complaint that no citation had been filed, but the trial court responded that Husband had been "nearly impossible" to locate and had been evasive. The court noted Husband was on notice of the hearing. The court directed the Temporary Order to be filed.[3]

¶ 5 At the hearing, Wife testified she was present in court December 20, 2006 when the court directed Husband to pay temporary alimony and attorney fees. Wife testified she had received no money from Husband since then. Wife also testified that she did not have health insurance after December 2006. Wife denied stealing artwork or other property of Husband while he was in jail. Wife asserted Husband wrote to her from jail and told her to take what she needed to support herself. Wife agreed she sold marital property worth $970 after the temporary order.

¶ 6 Husband also testified at the hearing. Husband agreed he was present with counsel at the December 20, 2006 temporary order hearing, "but I don't remember what the hearing was." At the contempt hearing, he testified he was then living in Broken Arrow in a duplex with his girlfriend. His monthly rent was $700–750 per month, and his friend Ronald James Abercrombie gave him the money to pay the rent each month.[4] Husband thought Abercrombie also paid the retainer for Husband's attorney in the divorce case. Husband testified he had another attorney for his criminal case, and Husband's

father paid the criminal defense attorney $100,000. Husband testified he had paid a third lawyer since December 2006, "because I was getting sued everywhere." Husband believed his father and Abercrombie paid that attorney on his behalf. Husband testified he probably had not asked his father or Abercrombie to pay the support alimony due under the temporary order. Husband testified he was released from jail in February or March 2008 and he remained unemployed, stating he did not have time to search for a job due to hearings and meetings with his lawyers. Husband testified he purchased groceries each month with money wired to him from Abercrombie. Husband testified he did not know what assets he owned. Counsel for Wife offered a 2004 financial statement which he asserted had been admitted at the temporary order hearing. Husband recognized the document. Husband agreed the financial statement showed that his net worth was then more than $15,000,000. Husband testified he had not paid the attorney fees ordered nor Wife's health insurance because he was in jail.[5] Husband denied receiving income from any source but Abercrombie. Husband testified that "a couple of times" Abercrombie had given Husband money to help pay for Husband's girlfriend's legal expenses.

¶ 7 Husband testified that in the temporary order, the court awarded Wife possession of two pieces of property: the marital home (which later was subject to foreclosure), and a home in Broken Arrow, which was debt-free. Husband testified that he

15, 2008. There is no indication the jury fee was paid, and Husband raised no objection to proceeding in a non-jury trial. The court denied the Motion to Dismiss before proceeding with the contempt hearing.

3. The December 20, 2006 Temporary Order was not filed until August 28, 2008. It provides that a hearing on Wife's Application for Temporary Relief was held December 20, 2006, at which time both parties were present with counsel. The order noted that the court reviewed the court file and heard testimony of two witnesses. The court awarded Wife temporary possession of the marital home and certain rental property; each party remained in possession of their current cars. The order directed Husband "to maintain the current arrangement for health in-

surance" for Wife. The order next directed Husband to pay support alimony of $4,500 per month beginning January 1, 2007, until further order of the court. The court also directed Husband to pay the tax due on the marital home and to pay temporary attorney fees of $2,000 on or before January 15, 2007. The Temporary Order was signed by the trial court August 28, 2008. The order was also signed by Wife and her counsel. Above the signature line for Husband, there is a written notation "waived by court."

4. Husband indicated Abercrombie is the trustee of the Boeckman Family Trust.

5. Husband asserted in various filings that he was incarcerated from January 19, 2007 until either February or March 2008.

had several judgments entered against him since the time of the temporary order and had not paid those. Husband testified he had sued Wife and other employees for taking things from his office while he was in jail. Husband testified Wife and others took 200 pieces of art that he had gotten from thrift stores and antique stores. Husband testified the artwork was worth $400,000 to $600,000, but Husband had not insured the art. Husband testified he did not know or did not recall whether he told Wife to sell things from his office. Husband agreed that Wife's Exhibit 1 was a letter he wrote telling Wife she could get things from his office "for survival." Husband testified he did not remember that. Husband testified he and Wife may have owned the artwork jointly, "I guess because it was part of the marital [estate]."

¶ 8 Wife asked for judgment for $92,000. Husband asked for an offset and contended he did not have the ability to pay and therefore there was no evidence of wilful failure to pay as required for contempt. The trial court announced that it found there was a temporary order hearing December 20, 2006, at which Husband was directed to pay $4,500 per month beginning January 1, 2007, as well as continue to provide health insurance for Wife and pay $2,000 for her attorney fees.

¶ 9 The court then addressed the issue of wilfulness. The court noted that despite not being employed, Husband was able to pay rent, maintain a car, post bond on a first-degree murder complaint, hire a criminal defense lawyer, and pay his girlfriend's attorney. The trial court was "not convinced that he doesn't have the money." The court found Husband's decision to pay for other things but not pay temporary support to Wife was clear and convincing evidence that Husband acted wilfully. The court found Husband was in indirect contempt of court and awarded judgment to Wife of $91,515. The court sentenced Husband to 6 months in the county jail, which was stayed for 60 days in which Husband could purge the debt.

¶ 10 Husband filed his Petition in Error October 24, 2008, in which he appealed the September 24, 2008 contempt judgment. The trial court docket indicates Husband was jailed for contempt in October 2008 and was released from custody December 1, 2008. After Husband filed his Petition in Error, but before the appeal was assigned to this court, the trial court approved the parties' Agreed Decree of Dissolution of Marriage, which was filed November 3, 2009.

¶ 11 This appeal was assigned to this court March 31, 2010. The errors alleged in Husband's Brief relate to the propriety of the September 2008 Journal Entry. Because the parties have settled the issues in the dissolution proceeding, this court issued an order directing Husband to show cause why this appeal should not be dismissed as moot. Husband responded that the parties had included the following provisions in the decree:

6. That (Wife) and (Husband) understand and agree that the judgment on appeal to the Supreme Court in [this case] shall not be dismissed and shall be maintained until the Supreme Court decides the judgment and issues on appeal, however, (Husband) will be paying at the (*sic*) $2,000.00 a month until the issues and judgments are either changed, reversed, modified, and or (*sic*) affirmed by the decisions of the Supreme Court or higher courts.

* * *

14. That (Wife) and (Husband) have agreed that as to the findings, decisions and judgments rendered by this court on 08–28–2008 on appeal to the Oklahoma Supreme Court ..., wherein among other things (Husband) was found guilty of indirect contempt of court and (Wife) was awarded a judgment against (Husband), those findings, issues, decisions and judgments now on appeal shall continue until (Husband) has exhausted all his remedies and or (*sic*) until the findings, decisions and judgments rendered by this court on 08–28–2008 have been reversed, set aside, modified in part by, the appeals court and or (*sic*) affirmed by the Oklahoma Supreme Court, and or (*sic*) mandated to this Court.

15. That (Wife) and (Husband) have agreed that as of June 10, 2009 the balance of that judgment is $90,238.00 and each has agreed that (Husband) shall pay $2,000.00 monthly to (Wife) beginning June

20, 2009 and continuing each month ... pending the final resolution of the issues on appeal in [this appeal].

16. That (Wife) and (Husband) have agreed that as of June 10, 2009 the court may continue to set review dates of the contempt sentencing of (Husband) on 08–28–2008, now on appeal ... and will withhold further execution on that sentence until such time as the court reviews whether or not (Husband) is complying with this agreement and what will likely be the court[']s order.

¶ 12 We agree with Husband that the parties contractually agreed for the temporary order-related contempt judgment not to merge with the decree.[6] Husband's Petition in Error was timely filed and we consider the merits of his appeal.

■■■ ¶ 13 "Indirect contempts of court shall consist of willful disobedience of any process or order lawfully issued or made by court; ...." 21 O.S.2001 § 565. Indirect contempt must be shown by clear and convincing evidence. "... (A)wards for alimony ... temporary or permanent, ... are excluded from the definition of 'debt' ... [and] may be enforced by contempt because of express statutory authority." *Potter v. Wilson*, 1980 OK 51, 609 P.2d 1278, 1281. *Potter* also held that court-ordered attorney fees in divorce cases also may be enforced by contempt. *Id.* More recently, the Oklahoma Supreme Court has affirmed that wilful disobedience of an order to pay temporary alimony constitutes indirect contempt of court. *Sommer v. Sommer*, 1997 OK 123, ¶ 8, 947 P.2d 512.

■■ ¶ 14 Husband's first claim of error is that the trial court should have granted Husband's motion to dismiss the contempt proceeding because no citation was issued. We have not found authority requiring a court-issued "citation" for indirect contempt. Instead, what is required is a written complaint alleging each of the elements of indirect contempt. 21 O.S.2001 § 567(A); *Webber v. Webber*, 1936 OK 720, 62 P.2d 490, 178 Okla. 174. In this case, Wife's application asserted that Husband had failed to pay the amounts due under the temporary order and that his failure to pay was wilful. Wife served the application on Husband by hand-delivering it to him. We find no error in refusing to dismiss the proceeding on this ground.

■■ ¶ 15 Husband's second proposition of error is nearly identical to his first. He repeats his claims that the trial court was without subject matter jurisdiction because Wife's application was insufficient, Husband did not receive summons, and the temporary order was not filed before the contempt proceeding. We have found that Wife's application properly alleged the grounds for a contempt citation. Husband received the application in open court; he was arraigned and entered a plea; and Husband appeared with counsel at the hearing on Wife's application. Husband clearly was on notice of the contempt proceeding. And, the trial court noted then that Husband had been elusive and avoided providing his address. Husband testified that he was in court with counsel at the time the temporary order was announced. We therefore find no support for Husband's claim that he was not on notice of the temporary order. In a dissolution proceeding, the court's orders are enforceable when pronounced.[7] Support alimony becomes a vested right as each payment becomes due. *Nantz v. Nantz*, 1988 OK 9, ¶ 10, 749 P.2d 1137, 1140.

---

6. Title 10 O.S.2001 § 110(B) provides that a temporary order terminates when a decree is entered, but that the trial court may retain jurisdiction to rule on an application for a contempt citation for violations of a temporary order.

7. See 12 O.S.2001 § 696.2, which provides, in part:

E. A judgment, decree or appealable order, whether interlocutory or final, shall not be enforceable in whole or in part unless or until it is signed by the court and filed; except that the adjudication of any issue shall be enforceable when pronounced by the court in the following actions: divorce; separate maintenance; annulment; post-decree matrimonial proceedings; paternity; custody; adoption; termination of parental rights; mental health; guardianship; juvenile matters; habeas corpus proceedings; or proceedings for temporary restraining orders, temporary injunctions, permanent injunctions, conservatorship, probate proceedings, special executions in foreclosure actions, quiet title actions, partition proceedings or contempt citations.

For these reasons, we find the temporary order was a lawful order of the court since its pronouncement, as required for a contempt finding.

¶16 Husband's final assertion of error is that he was entitled to a setoff of the value of property he alleged Wife took from him while he was in jail on another matter. The testimony on this issue was disputed, both as to the amount and value of the property and as to whether Wife acted with Husband's consent. Wife presented evidence in the form of a letter from Husband telling her to take what she needed to survive. And, Husband agreed the property may have been marital. Competent evidence supports the trial court's decision not to allow a setoff as requested by Husband.

¶17 Clear and convincing evidence showed that Husband wilfully disobeyed a lawful order of the court. As a result, the September 28, 2008 Journal Entry is AFFIRMED.

HANSEN, J., and HETHERINGTON, J., concur.